SECOND DIVISION

SEPTEMBER 13, 2005 

1-04-2403

HARRY POLITES, ) Appeal from the 

)    Circuit Court of

Plaintiff-Appellant, ) Cook County.

)

    v. ) No. 02 M1 302759

)

U.S. BANK NATIONAL ASSOCIATION, ) The Honorable

) Moira S. Johnson,

Defendant-Appellee. )    Judge Presiding.

JUSTICE GARCIA delivered the opinion of the court.

The plaintiff Harry Polites appeals the dismissal of his personal injury action against U.S. Bank National Association.  The trial court dismissed U.S. Bank because Polites failed to name it as a defendant within two years of his injury.  Polites relies on section 2-616(d) of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-616(d) (West 2002)) for his contention that his amended complaint naming U.S. Bank related back to his original complaint.  Because we agree with Polites, we reverse and remand.
(footnote: 1)

BACKGROUND

On June 5, 2000, Polites went to a U.S. Bank branch office located at 744 North Milwaukee Avenue in Chicago, Illinois.  As Polites sat down in a chair in a waiting area, he allegedly hit his back on a granite counter directly behind the chair, causing injury.  

On January 4, 2001, Polites' attorney sent a letter to U.S. Bank at 744 North Milwaukee explaining the injury and asking to discuss possible payment of Polites' medical bills.  Six days later, the attorney received a letter from Constitution State Services (CSS).  CSS, an insurance claims service, wrote:

"We handle claims for U.S. Bancorp and I'm writing acknowledging your representation of Mr. Harry Polites in reference to this incident on June 5, 2000 at our client's branch bank located on Milwaukee Avenue.

Our client does carry Medical Expense coverage with a $5,000.00 limit, which is good for medial treatment related to injury or injuries incurred on their business premise.  The coverage is good for one year."

The letter requested additional information, including Polites' medical history and records.  In fact, U.S. Bancorp is a holding company that provides administrative services to its subsidiaries including U.S. Bank.  From January 2001 to June 2002, CSS and Polites' attorney discussed a possible settlement to avoid litigation. 

In June 2002, when CSS and Polites still had not reached a settlement, Polites' attorney, Andrew Ligas, informed CSS that he had to file a complaint but would delay service while their settlement negotiations continued.  On June 4, 2002, one day before the limitations period expired, Polites filed his complaint naming only U.S. Bancorp as the defendant.

One week later, Ligas faxed a copy of the complaint naming U.S. Bancorp as defendant and summons to CSS.  CSS responded with a letter stating in part:

"Thank you for your fax transmission of the Summons and Complaint ***.  As I understand it, this had been filed with the court, but has not been served on our client.  If you do serve our client, please contact [us] immediately."

Eight months later, Polites' negotiations with CSS ended without settlement.  On February 3, 2003, CSS notified Polites that it did not believe U.S. Bancorp was liable for his injury.  CSS wrote:

"[W]e do not believe U.S. Bancorp bears any liability for the alleged injuries.  The overhang from the counter was open and obvious and Mr. Polites would have had the option to move the chair or sit elsewhere.  With respect to damages, we have not been presented with any substantiation of the injuries.  All medical records that we have received are for treatment prior to the date of the alleged accident.  Based on the information available to us at this time, we must respectfully deny any claims by Mr. Polites arising out of this matter."

On March 19, 2003, U.S. Bank vice-president Michael Clawson was served a copy of Polites' complaint at U.S. Bank's offices located at 30 North Michigan Avenue in Chicago.  

Three months later, U.S. Bancorp filed a combined motion to quash service of process and to dismiss the complaint.  U.S. Bancorp contended: (1) service of process should be quashed because Clawson was an officer of U.S. Bank, not U.S. Bancorp; (2) Polites was not reasonably diligent because he waited nine months after the limitations period lapsed to serve U.S. Bancorp, entitling it to dismissal of the complaint pursuant to Supreme Court Rule 103(b) (177 Ill. 2d R. 103(b)); and (3) the court lacked personal jurisdiction over U.S. Bancorp, which as a holding company, was not organized under Illinois law and did not conduct business in the state.

On July 29, 2003, the trial court granted U.S. Bancorp's motion to dismiss but granted Polites leave to amend his complaint.  On August 11, 2003, Polites filed an amended complaint naming U.S. Bank as the defendant instead of U.S. Bancorp.  U.S. Bank was served a copy of the amended complaint three days later at its Milwaukee Avenue location.  The order granting U.S. Bancorp's motion to dismiss was not appealed.

On February 6, 2004, U.S. Bank filed its motion to dismiss for failure to file within the limitations period.  U.S. Bank contended Polites' amended complaint did not relate back to his first complaint because Polites failed to name U.S. Bank in his complaint within the limitations period and U.S. Bank was not diligently served notice of the action under Rule 103(b) (177 Ill. 2d R. 103(b)).  The trial court agreed and dismissed Polites' amended complaint with prejudice.

On appeal, Polites contends his complaint was wrongfully dismissed because it related back to his original complaint as allowed by section 2-616(d) of the Code.  735 ILCS 5/2-616(d) (West 2002).  He contends he met all three requirements of section 2-616(d): (1) his original complaint was filed within the two-year limitations period; (2) U.S. Bank had notice of the action within the limitations period or within the time for service permitted under Rule 103(b); and (3) the amended complaint asserts the same cause of action arising from the same occurrence alleged in the original complaint.

ANALYSIS

I.  Standard of Review

The plaintiff asks us to reverse the trial court's section 2-619 dismissal (735 ILCS 5/2-619 (West 2002)) of his claim against U.S. Bank.  We review section 2-619 dismissals 
de
 
novo
.  
Ferguson v. City of Chicago
, 213 Ill. 2d 94, 99, 820 N.E.2d 455 (2004).

II.  Relationship Between U.S. Bank and U.S. Bancorp

Polites initially named U.S. Bancorp as the defendant in his complaint, and U.S. Bancorp obtained a dismissal.  Polites then filed an amended complaint, naming U.S. Bank as the sole defendant, but that complaint was also dismissed because it was filed after the statutory limitations period had expired.  Before deciding whether Polites' amended complaint was properly dismissed, we need to clarify the relationship between U.S. Bancorp and U.S. Bank.  If they are one and the same, it follows that the plaintiff must prevail.

In Illinois, corporations are treated as separate legal entities even where one wholly owns the other and the two have mutual dealings.  
In re Rehabilitation of Centaur Insurance Co.
, 158 Ill. 2d 166, 172, 632 N.E.2d 1015 (1994).  

"Generally, before the separate corporate identity of one corporation will be disregarded and treated as the alter ego of another, it must be shown that it is so controlled and its affairs so conducted that it is a mere instrumentality of another, and it must further appear that observance of the fiction of separate existence would, under the circumstances, sanction a fraud or promote injustice."  
Main Bank of Chicago v. Baker
, 86 Ill. 2d 188, 205, 427 N.E.2d 94 (1981).

In this case, we know relatively little about the inner workings of U.S. Bancorp and U.S. Bank.  Polites contends U.S. Bancorp and U.S. Bank "avail U.S. Bank branches as places of business for both, and they share (among other things) a slogan, design, website, insurer and the same attorneys."  According to Jeanne Escobedo, assistant secretary for both corporations, U.S. Bancorp is a holding company, and U.S. Bank is one of its several subsidiaries.  U.S. Bank maintains branch offices in Illinois.  According to the pleadings in the record, both U.S. Bancorp and U.S. Bank are clients of CSS.  As a holding company, U.S. Bancorp provides administrative services to U.S. Bank and nothing more, according to Escobedo.  Escobedo avers U.S. Bancorp does not do business in Illinois.  U.S. Bank's executive vice-president, who was served a copy of Polites' complaint on March 19, 2003, was not an officer of U.S. Bancorp. 

Based on these facts, we cannot conclude U.S. Bancorp controlled U.S. Bank or that U.S. Bank is a "mere instrumentality" of its holding company.  Accordingly, we must treat U.S. Bank and U.S. Bancorp as separate entities.

III.  Section 2-616(d)'s Element of Mistake

Polites did not name U.S. Bank as the defendant until 14 months after the limitations period had expired.  Therefore, he must meet the requirements of section 2-616(d) of the Code (735 ILCS 5/2-616(d) (West 2002)) for his amended complaint to survive dismissal.  See 
Pruitt v. Pervan
, 356 Ill. App. 3d 32, 35, 825 N.E.2d 299 (2005).

Section 2-616(d) provides:

"A cause of action against a person not originally named a defendant is not barred by lapse of time under any statute or contract prescribing or limiting the time within which an action may be brought or right asserted, if all the following terms and conditions are met: (1) the time prescribed or limited had not expired when the original action was commenced; (2) the person, within the time that the action might have been brought or the right asserted against him or her plus the time for service permitted under Supreme Court Rule 103(b), received such notice of the commencement of the action that the person will not be prejudiced in maintaining a defense on the merits and knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him or her;
 
and (3) it appears from the original and amended pleadings that the cause of action asserted in the amended pleading grew out of the same transaction or occurrence set up in the original pleading ***.  For the purpose of preserving the cause of action under those conditions, an amendment adding the person as a defendant relates back to the date of the filing of the original pleading so amended."  735 ILCS 5/2-616(d) (West 2002).

If Polites is able to satisfy the requirements of section 2-616(d), then his amended complaint takes on the filing date of his original complaint, and his cause of action may be pursued against U.S. Bank despite the expiration of the statute of limitations when it was named a defendant.  
Fassero v. Turigliatto
, 349 Ill. App. 3d 368, 371, 811 N.E.2d 252 (2004).  

We first address whether section 2-616(d) applies to this case at all.  
Pruitt
, 356 Ill. App. 3d at 36.  That is, would Polites have named U.S. Bank, rather than U.S. Bancorp, as the defendant in his original complaint "but for a mistake concerning the identity of the proper party"?  See 735 ILCS 5/2-616(d) (West 2002).

To determine whether this is a case of mistaken identity, we look at the plaintiff's intent in bringing the lawsuit.  
Pruitt
, 356 Ill. App. 3d at 36; 
Fassero
, 349 Ill. App. 3d at 371.  In 
Pruitt
, another premises liability action, this court found the statute did not apply because the plaintiff's failure to name the proper defendants was due to a lack of information about the other parties' responsibility for the premises.  The plaintiff assumed the management company, rather than the property's owners, was liable for her injury and named the management company in her first complaint.  Later, she attempted to amend her complaint to name the owners.  She did not contend any misrepresentations were made or facts concealed to cause her to file her initial suit against the management company alone.  
Pruitt
 was not a case of mistaken identity--the plaintiff named the management company because that is the party she intended to hold responsible for her injuries.  
Pruitt
, 356 Ill. App. 3d at 37-38.

Unlike in 
Pruitt
, the court in 
Fassero
 found mistaken identity
.  In 
Fassero
, the plaintiff was in a car accident and intended to sue the driver of the car.  According to the plaintiff, the other driver, Todd Turigliatto, identified himself as Thomas Turigliatto.  Thomas Turigliatto was Todd's brother and the owner of the car.  The plaintiff named Thomas in her complaint and served him a copy.  Thomas showed the complaint to Todd, who lived with him.  The court said:

"[A] reading of plaintiff's complaint would demonstrate to Todd that he was the one that should have been named in the suit, not Thomas.  Todd was aware, or should have been aware, of the nature of the action after seeing plaintiff's complaint and therefore would not be prejudiced in maintaining a defense on the merits."  
Fassero
, 349 Ill. App. 3d at 376.

This case is more like 
Fassero
 than 
Pruitt
.  From the beginning, Polites intended to bring his claim against the owner and operator of the branch office where his injury occurred--U.S. Bank.  He directed his first claim letter to U.S. Bank at its branch office on Milwaukee Avenue.  When that letter was forwarded to CSS, CSS told Polites that its client was U.S. Bancorp, and the incident occurred at its "client's branch bank located on Milwaukee Avenue."  From that point on, correspondence between Ligas and CSS referred only to U.S. Bancorp, not U.S. Bank.  When CSS denied U.S. Bancorp's liability for Polites' alleged injuries, it did not base its denial on any claim that U.S. Bancorp was not the proper defendant.  Instead, CSS relied on its contention that the alleged defect at the bank was "open and obvious" and that the medical bills Polites produced to support his claim for damages predated the alleged injury.  U.S. Bancorp filed no pleadings indicating it was the wrong party until June 20, 2003, three months after it was served.

Polites' complaint indicates his intent to sue the owner and operator of the U.S. Bank branch office where he allegedly was injured.  He alleged, "On or before June 5, 2000, Defendant [U.S. Bancorp] owned, operated, managed, maintained, and controlled the premises located at 744 North Milwaukee, Chicago ***."  Only when U.S. Bancorp filed its motion to dismiss did Polites discover that U.S. Bancorp was a holding company that provided "no more than administrative services to its subsidiaries *** including [U.S. Bank]" and did not conduct business in Illinois.  The only difference between Polites' original and amended complaints was the substitution of U.S. Bank for U.S. Bancorp as the defendant.

Just as the plaintiff in 
Fassero
 was led to believe the driver's name was Thomas instead of Todd because the driver told the plaintiff so, Polites was led to believe the owner of the bank was U.S. Bancorp instead of U.S. Bank based on CSS's initial letter of January 10, 2001, mentioning U.S. Bancorp as its client and the location of the injury as its "client's branch bank," although Polites' letter was directed to U.S. Bank.

U.S. Bank contends Polites made a conscious decision to sue U.S. Bancorp instead of U.S. Bank and that he failed to perform an adequate investigation into which entity was the proper defendant.  We disagree.  Polites acted reasonably when he relied on CSS's statement that the incident occurred at its client U.S. Bancorp's "branch bank."  In fact, U.S. Bank received Polites' initial claim letter and forwarded the claim to CSS.  We find it reasonable for Polites to rely upon CSS's representations that the party responsible for the premises was named U.S. Bancorp, rather than U.S. Bank. 

Thus, this is not a case like 
Pruitt
, where no misrepresentations were made regarding the identity of the proper defendant.  Here, CSS led Polites to believe U.S. Bancorp was the proper defendant.  We conclude this case is one of mistaken identity and the relation-back statute applies to this case.
(footnote: 2)
IV.  Section 2-616(d)'s Timely Notice Requirement

Because we have determined this is a case of mistaken identity, we must next decide whether Polites meets the other requirements of section 2-616(d), including whether U.S. Bank received "notice of the commencement of the action" within the two-year limitations period or the time for reasonably diligent service as allowed by Rule 103(b).  See 735 ILCS 5/2-616(d)(2) (West 2002).

Rule 103(b) states:

"If the plaintiff fails to exercise reasonable diligence to obtain service on a defendant, the action as to that defendant may be dismissed without prejudice, with the right to refile if the statue of limitation has not run.  The dismissal may be made on the application of any defendant or on the court's own motion."  177 Ill. 2d R. 103(b).

Although the previous version of the statute required service of summons and knowledge of the original action, the statute as amended requires only notice.  735 ILCS 5/2-616 (West 2002); see 
Gibson v. Russann, Ltd.
, 179 Ill. App. 3d 208, 209-10, 534 N.E.2d 449 (1989).

Polites contends several events provided U.S. Bank with the required notice within the statute of limitations and also within the period allowed by Rule 103(b) for reasonably diligent service.  The four events are: (1) the January 2001 letter Polites' attorney sent to U.S. Bank advising it of his injuries and request for payment; (2) several letters sent to CSS disclosing Polites' intent to file his lawsuit; (3) CSS's receipt of a copy of his complaint on June 11, 2002; and (4) actual service of the complaint on U.S. Bank vice-president Clawson on March 19, 2003.  We address events 1 and 2 together as letters sent prior to June 4, 2002, the date the complaint was filed, and address events 3 and 4 in reverse order.

A.  
Letters sent prior to June 4, 2002

Neither the demand letter sent to U.S. Bank in 2001 nor the letters prior to June 4, 2002, sent to CSS before the filing of the complaint meet the Code's requirements because section 2-616(d) clearly states that the entity must receive "notice of 
the commencement of the action
."  (Emphasis added.)  735 ILCS 5/2-616(d)(2) (West 2002).  Section 2-201(a) of the Code states, "Every action, unless otherwise expressly provided by statute, shall be commenced by the filing of a complaint."  735 ILCS 5/2-201(a) (West 2002).  As the action commenced on June 4, 2002, none of the letters sent before that date constituted notice of the commencement of the action under the plain meaning of the statute.

B.  
Service upon U.S. Bank on March 19, 2003

U.S. Bank vice-president Clawson was served a copy of Polites' complaint on March 19, 2003.  At that point, U.S. Bank's knowledge of the commencement of the action became certain.  Nonetheless, the notice of the commencement of the action by service of process, more than nine months after the limitations period lapsed, requires Polites to account for the delayed service as required by Rule 103(b) (177 Ill. 2d R. 103(b)).

Because service occurred after the statutory limitations period, it must fall within the period for reasonably diligent service as allowed by Rule 103(b) (177 Ill. 2d R. 103(b)) to qualify as timely notice under section 2-616 (735 ILCS 5/2-616 (West 2002)).  Rule 103(b) does not specify an exact time period for compliance; it only requires the plaintiff be diligent in his efforts to obtain service.  177 Ill. 2d R. 103(b).

The Illinois Supreme Court set forth several factors to determine whether a plaintiff was diligent in his efforts to serve a defendant under Rule 103(b) (177 Ill. 2d R. 103(b)).  Those factors include: (1) the defendant's actual notice or knowledge of the suit; (2) lack of prejudice to the defendant; (3) the length of time used to obtain service of process; (4) the plaintiff's activities; (5) the plaintiff's knowledge of the defendant's location; (6) the ease of ascertaining the defendant's location; (7) special circumstances that affected the plaintiff's efforts; and (8) actual service on the defendant.  
Womick v. Jackson County Nursing Home
, 137 Ill. 2d 371, 377, 561 N.E.2d 25 (1990).  

Additionally, courts consider when the complaint was filed, because if a plaintiff files suit near the end of the limitations period, a lengthy delay in service nullifies any protection against stale claims the statute of limitations might afford the defendant.  
Lee v. Decker
, 17 Ill. App. 3d 93, 96, 307 N.E.2d 773 (1974).  "The standard for determining reasonable diligence is an objective one, and plaintiffs have the burden of showing that they exercised such diligence in their efforts to obtain service."  
Parker v. Piskur
, 258 Ill. App. 3d 344, 347, 630 N.E.2d 475 (1994).  

To determine whether the plaintiff has exercised reasonable diligence, we look to the factors set out in 
Womick
, 137 Ill. 2d at 377.  In 
Womick
, the supreme court affirmed the dismissal after applying the above factors and finding no evidence that the plaintiff was diligent in his efforts to obtain service of process.  
Womick
, 137 Ill. 2d at 380.  
The court noted dismissal was proper pursuant to Rule 103(b) in cases where the plaintiffs made no effort to serve the defendants for a significant time period after filing their complaints.  
Womick
, 137 Ill. 2d at 379; 
see 
Penrod v. Sears, Roebuck & Co
, 150 Ill. App. 3d 125, 127, 501 N.E.2d 367 (1986) (dismissal proper where the plaintiff made minimal efforts to serve the defendant).  The plaintiff waited almost nine months after the statutory limitations period expired and gave no explanation for his inactivity.  
Womick
, 137 Ill. 2d at 380.  It was established that the defendant was easy to locate as it was served one day after the plaintiff requested service from the clerk of court.  
Womick
, 137 Ill. 2d at 381.  That the defendant had notice of the lawsuit before being served did not preclude dismissal under Rule 103(b).  
Womick
, 137 Ill. 2d at 381.

In this case, Polites waited more than nine months before trying to obtain service on U.S. Bancorp and, ultimately, served U.S. Bank instead.  The record reveals no earlier attempts to serve or directly notify U.S. Bank or U.S. Bancorp that Polites had commenced legal action.  The only explanation for the delay in service is Polites' continuing settlement negotiations with CSS.  According to Ligas' affidavit, he spoke with CSS agent Dick Pollak in May 2002.  Pollak requested an entry of a stipulation to suspend or toll the statute of limitations during negotiations.  Ligas decided that would be too difficult to attempt in such a short amount of time.  Ligas advised Pollak that he would file the complaint to protect himself, but "would not attempt to serve the complaint during negotiations."  Although Polites contends U.S. Bank via CSS requested the delay in service, we find nothing in the record to support that contention.  Rather, it appears Ligas offered to delay service in lieu of a stipulation to toll the statutory limitations period.  When negotiations between Polites and CSS ended on February 3, 2003, CSS wrote:

"We understand you intend on serving the suit in the matter referenced above. *** 

Based on [CSS's] review of the file, we do not believe U.S. Bancorp bears any liability for the alleged injuries."

Polites then waited another six weeks before serving U.S. Bank with a copy of the complaint.  We do not believe ongoing settlement negotiations excuse the delay in service.  As in 
Womick
, a nine-month delay without any attempt to serve the defendant is not reasonably diligent.  
Cf. Parker
, 258 Ill. App. 3d at 348 (the defendant was estopped from raising delayed service because it advised service was not necessary in light of imminent settlement, but the defendant was not estopped from asserting lack of diligence in delay of service occurring after settlement negotiations ended); see also 
Lee
, 17 Ill. App. 3d at 96 ("[i]n the absence of any allegation that the plaintiff was induced by these negotiations or by a promise of settlement from securing prompt service, actual knowledge of the suit is no more than a single factor in determining whether reasonable diligence was exercised").  Therefore, service of the complaint on U.S. Bank's vice-president on March 19, 2003, does not meet Rule 103(b)'s requirements for timely "notice of the commencement of the action," and Polites' amended complaint cannot relate back to his original complaint based on that receipt of notice by U.S. Bank.

C.  
CSS's Receipt of the Complaint on June 11, 2002

The first notice of the filing of the complaint occurred on June 11, 2002, when Ligas faxed a copy of the complaint to CSS.  We find this one-week delay after the limitations period expired would fall within the period of time allowed under Rule 103(b) for notice of the commencement of the action.  See 
Fassero
, 349 Ill. App. 3d at 375 (one-week lapse between filing of complaint and notice complied with Rule 103(b)).  Timely notice notwithstanding, another problem arises with regard to the faxed complaint on June 11, 2002: it was sent to CSS, not U.S. Bank.  CSS and U.S. Bank are separate entities, and in order to use the June 11, 2002, date for compliance with the notice provision of Rule 103(b), Polites must show U.S. Bank received notice by CSS's receipt of the faxed copy of the complaint.  

Polites contends we can impute CSS's knowledge of the complaint to U.S. Bank because CSS was U.S. Bank's agent throughout negotiations.  We examine whether under the facts presented here notice to CSS constitutes notice to U.S. Bank under existing case law.  Because the reported cases concerning section 2-616 since it was amended have turned on the issue of mistake and  not notice (although
 
Fassero
, 349 Ill. App. 3d at 375-76, may be the exception where the court held the newly added defendant received timely notice on the date the original defendant showed the newly added defendant the complaint the day he was served, five days after the statute of limitations ran; 
Fassero
 provides no guidance in this case as there is no evidence CSS showed the faxed copy of the complaint to U.S. Bank in June 2002), we turn to federal cases for guidance because the current version of section 2-616(d) is based on Federal Rule of Civil Procedure 15(c).  See 
Compton v. Ubilluz
, 351 Ill. App. 3d 223, 233, 811 N.E.2d 1225 (2004).

 Federal Rule of Civil Procedure 15(c), like section 2-616(d), allows an amended complaint to relate back if the new party named in the amended complaint received notice of the action within the period allowed for service of process such that it would not be prejudiced in maintaining a defense on the merits.  Compare Fed. R. Civ. Proc. 15(c), with 735 ILCS 5/2-616(d) (West 2002).

Federal courts have decided three types of notice comply with Federal Rule of Civil Procedure 15(c):  (1) actual notice received by the party (
Singletary v. Pennsylvania Dept. of Corrections
, 266 F.3d 186, 195 (3rd Cir. 2001)); (2) actual notice received by the party's agent (
Peterson v. Sealed Air Corp.
, 902 F.2d 1232, 1237 (7th Cir. 1990)); or (3) constructive notice (
Singletary
, 266 F.3d at 195-96).  

1.  Actual Notice

In this case, Polites does not contend U.S. Bank received actual notice directly, so we turn to the second type of actual notice, that by the party's agent.  We must thus decide whether CSS was U.S. Bank's agent for notice purposes.

Before notice to an agent can be found to meet the rule's requirements, the plaintiff must show that the party he seeks to add authorized the agent to receive notice of claims on its behalf.  
Peterson
, 902 F.2d at 1237.

In 
Peterson
, the plaintiff served a copy of an original complaint on the named defendant's special agent for service of process.  Later, when the plaintiff amended his complaint to name the original defendant's parent company, the court allowed the amendment under Federal Rule of Civil Procedure 15(c) because the special agent also was authorized to receive service for the parent company.  The court said:

"Usually 
any
 agent's knowledge is attributed instantly to the corporation, so long as the agent has actual authority on the question. *** The more particular 'rules applying to the liability of a principal because of notice to his agent' say that unless the person giving notice knows that the agent has an interest adverse to the principal's, 'a notification given to an agent is notice to the principal if it is given *** to an agent authorized to conduct a transaction, with respect to matters connected with it as to which notice is usually given to such an agent ***.'"  (Emphasis in original.)  
Peterson
, 902 F.2d at 1236, quoting 
Restatement (Second) of Agency
 § 268(1)(c) (1958).

There, notice to the special agent--a person having both apparent and actual authority to receive notice on behalf of the corporation--was enough to permit the amendment under the federal rule.  
Peterson
, 902 F.2d at 1237.

Here, Polites never specified which type of authority U.S. Bank or U.S. Bancorp granted CSS.  Looking at the facts, U.S. Bank admitted CSS was its insurance claims service but did not expressly state what CSS was authorized to do.  U.S. Bank's only action that arguably gave CSS implied or apparent authority occurred when U.S. Bank forwarded the letter it received from Polites to CSS.  Neither U.S. Bank nor U.S. Bancorp denied Polites' assertion that U.S. Bank, not U.S. Bancorp, forwarded the letter to CSS.  When CSS began its investigation of Polites' claim, all subsequent correspondence flowed between Polites' attorneys and CSS.  The record does not indicate whether CSS shared any information it gathered from Polites with either U.S. Bank or the client it claimed to represent--U.S. Bancorp.

Besides the forwarding of this letter, we find little evidence connecting CSS to U.S. Bank.  CSS consistently listed its client as "U.S. Bancorp" in its letters to Polites' attorneys.  CSS told Polites it "handled" U.S. Bancorp's claims.  From that statement, Polites may have reasonably believed CSS had authority to act on behalf of U.S. Bancorp.  See 
Long v. Great Central Insurance Co
., 190 Ill. App. 3d 159, 167 (1989) "[t]he most significant indicia of an agency relationship is the agent tending to the principal's affairs with the principal's acquiescence").  But the only reference to U.S. Bank CSS made was an indirect one concerning "[its] client's branch bank located at Milwaukee Avenue."  According to U.S. Bancorp, it does not own or operate branch banks--that responsibility falls entirely on U.S. Bank. 

Even if U.S. Bank and CSS created an appearance that CSS had the authority to investigate Polites' claim, CSS made it clear it was not authorized to accept service on behalf of its client, whoever that may be.  After CSS received the faxed copy of Polites' complaint, a CSS employee told Polites' attorney, "[a]s I understand it, this has been filed with the court, but has not been served on our client.  If you serve our client, please contact me immediately."  CSS consistently listed its client as "U.S. Bancorp" in its letters to Polites' attorneys.  CSS told Polites it "handled" U.S. Bancorp's claims.  From that statement, Polites may have reasonably believed CSS had the authority to act on behalf of U.S. Bancorp.  However, CSS made only an indirect reference to U.S. Bank when CSS mentioned "[its] client's branch bank located at Milwaukee Avenue." 

We do not have any evidence in this case that CSS ever forwarded a copy of the original complaint to either U.S. Bank or U.S. Bancorp.  See 
Long v. Great Central Insurance Co.
, 190 Ill. App. 3d 159, 165-66 (1989) (question of fact existed whether insurance company gave its agent the apparent authority to receive notice of claims where the company customarily accepted information and documents from its customers through the agents); 
State Security Insurance Co. v. Burgos
, 145 Ill. 2d 423, 432 (1991) (insurance company gave agent apparent authority to receive notice of claims by routinely accepting notice through its agents).
  Further, we cannot assume that because CSS represented both corporations it notified both of any information it collected from Polites.  See 
Morton v. Madison County Nursing Home Auxiliary
, 198 Ill. 2d 183, 192, 761 N.E.2d 145 (2001) ("when an individual who acts as an agent for several entities is served with summons, he may understandably notify only the defendant named in the summons and not the others for whom he also acts as agent").  Therefore, we conclude CSS was not U.S. Bank's agent for purposes of notice and move on to examine whether constructive notice has been satisfied.

2.  Constructive Notice

Although no Illinois court has held constructive notice meets the requirements of section 2-616, federal law allows amended complaints to relate back under Federal Rule of Civil Procedure 15(c) where the added party had constructive notice.  
Singletary
, 266 F.3d at 195.  

Constructive notice occurs where a defendant does not receive notice of an impending lawsuit, but due to its relationship with an entity that received actual notice, knowledge of the action is imputed to the defendant for purposes of adding it as a new party.  
Singletary
, 266 F.3d at 195-96.

Under federal law, there are three ways to establish constructive notice: (1) notice via sharing an attorney with the original defendant (
Singletary
, 266 F.3d at 196); (2) notice via an identity of interest with the original defendant (
Singletary
, 266 F.3d at 197-98); or (3) notice via someone who handles the would-be defendant's insurance claims (
Korn v. Royal Carribean Cruise Line, Inc.
, 724 F.2d 1397, 1401 (9th Cir. 1984); 
Smith v. TW Services, Inc.
, 142 F.R.D. 144, 148 (M.D. Tenn. 1991)).

We consider the third method first because 
Korn
 and 
Smith
 are factually analogous to this case.  In 
Korn
, the plaintiff, Julius Korn, was injured while on a Royal Carribean cruise ship.  Korn's attorney wrote a letter to Royal Carribean Cruise Line, Incorporated (RCCL Inc.).  At the time, Korn did not know RCCL, Inc., was simply the general sales agent for Royal Carribean Cruise Line A/S (RCCL A/S), the owner of the ship.  The letter was forwarded to Carribean Marine Associates, Incorporated (CMA), the company that usually handled insurance claims for RCCL, Inc., and RCCL A/S.  CMA advised Korn's attorney that it was examining his claim and requested additional documentation to further the possibility of "concluding" the matter.  All correspondence between CMA and Korn indicated copies were sent to RCCL A/S's operating agent.  
Korn
, 724 F.2d at 1400-01.

When Korn inquired about a possible settlement, his attorney was told the matter was forwarded to CMA's "principals."  A CMA employee told Korn's attorney RCCL, Inc., was the proper defendant's name.  Korn named RCCL, Inc., as defendant in his complaint and served it by sending a copy to CMA after the statutory limitations period expired.  Sometime after that, Korn learned RCCL A/S owned the cruise ship, and he attempted to amend his complaint to add RCCL A/S as a defendant.  
Korn
, 724 F.2d at 1401.

On appeal to the Ninth Circuit, the court decided RCCL A/S received proper notice for the amended complaint to meet Federal Rule of Civil Procedure 15(c).  The court said:

"RCCL A/S should not be allowed to utilize Fed. R. Civ. P. 15(c) as a log to hide behind.  CMA, RCCL A/S' agent for claims purposes, knew full well of the pending suit and had been notified that the complaint was filed before expiration of the limitation period.  Moreover, an employee of CMA, after being advised that suit had been filed, affirmed that RCCL Inc. was the properly named party defendant."  
Korn
, 724 F.2d at 1401. 

The court concluded CMA was privy to the fact Korn filed suit and there was "sufficient community of interest" between RCCL, Inc., RCCL A/S, and CMA to impute knowledge of the lawsuit to RCCL A/S.  
Korn
, 724 F.2d at 1401.

In 
Smith
, the United States District Court for the Middle District of Tennessee adopted a magistrate's report and recommendation in its order.  According to the report, the plaintiff tripped and fell on a loose piece of tile at a Hardee's restaurant.  Smith's attorney contacted Hardee's insurance adjusters, and the two discussed her injuries in a series of letters.  At some point, Seibels-Bruce Insurance Company (SBIC) began handling Smith's claim.  SBIC was the liability insurer for TW Services, Incorporated (TW), and Spartan Food Systems (Spartan).  TW assumed Spartan's position as Hardee's owner and operator.  Smith's attorney told SBIC that he would delay filing suit to discuss a possible settlement.  The attorney eventually sent SBIC a copy of Smith's complaint naming Hardee's as the only defendant.  When Smith amended her complaint to name TW as a defendant after the limitations period expired, TW moved to dismiss for lack of proper notice under Rule 15(c).  
Smith
, 142 F.R.D. at 145-46.

At that time, notice had to be received within the statutory limitations period in order to meet Rule 15(c)'s requirements.  Only SBIC's receipt of an "information copy" of the complaint met that deadline, so the court had to decide whether notice to a liability insurer could provide the sole basis for Rule 15(c) notice to a new defendant.  
Smith
, 142 F.R.D. at 146.  Although 
Smith
 was not an "identity of interest" case, the court decided SBIC's full authority to investigate and settle the claim and its later role in the litigation created a "substantial unity of interests" between SBIC and TW.  
Smith
, 142 F.R.D. at 149.  Absent any possible prejudice to TW, the court imputed SBIC's knowledge of the complaint to TW and the amended complaint survived dismissal.  
Smith
, 142 F.R.D. at 149.

The 
Smith
 court said:

"Based on the prolonged correspondence between plaintiff's counsel and TW's liability insurer, including settlement requests, injury/medical updates and finally a copy of the complaint, the undersigned concludes that TW received sufficient notice of this action that it will not be prejudiced in the maintenance of its defense."  
Smith
, 142 F.R.D at 149.

These cases closely resemble the facts now before us.  U.S. Bank forwarded Polites' claim to CSS to handle.  In that sense, CSS is like CMA in 
Korn
 and SBIC in 
Smith
.  It was authorized to investigate claims against both the named defendant, U.S. Bancorp, and the party substituted for U.S. Bancorp in the amended complaint, U.S. Bank.  CSS received notice of the lawsuit by fax on June 11, 2002, within the period allowed by section 2-616 (735 ILCS 5/2-616 (West 2002)).  See 
Fassero
, 349 Ill. App. 3d at 375 (one-week lapse between filing of complaint and notice complied with Rule 103(b)).  This case differs from 
Korn
 in that we do not know whether correspondence between CSS and Polites' attorney was forwarded to CSS's two principals.  On the other hand, as in 
Smith
, we see little likelihood that U.S. Bank will be prejudiced in preparing its defense.  Its claims service investigated Polites' claims, collected his medical records, and concluded the bank was not liable for Polites' injuries based on the nature of the alleged defect and Polites' inability to prove damages.  CSS would not have been able to reach any conclusion about the nature of the alleged defect--a counter overhang extending too far--in an office owned and operated by U.S. Bank without questioning U.S. Bank directly.  CSS also received a copy of Polites' original complaint, which raised the exact same claim as the amended version.

Based on the foregoing authority and the facts of this case, we find that U.S. Bank had constructive notice of Polites' complaint, through the copy of the complaint faxed to CSS, so as to permit its substitution as a defendant under Polites' amended complaint.  We further find that Polites meets the remaining elements of section 2-616, namely, that U.S. Bank should have known it would have been named as the proper defendant but for Polites' mistake.  U.S. Bank owned the premises and knew U.S. Bancorp could not be held liable as it was merely a holding company.  Additionally, the complaint was based on the same occurrence as the original.  

CONCLUSION

For the foregoing reasons, we reverse the dismissal of Polites' complaint and remand for further proceedings.

Reversed and remanded for further proceedings.

BURKE, P.J., and HALL, J., concur.

FOOTNOTES
1: Justice Wolfson originally heard oral argument in this case.  Upon his recusal, Justice Hall was substituted and has reviewed the record, briefs, and audio recording of the oral argument.

2: 
Polites also argues that the principles of equitable estoppel preclude the dismissal of his complaint.  Because we reverse and remand on other grounds, we do not address this argument except to note that any misrepresentations allegedly made by U.S. Bancorp would have been better raised in an estoppel argument to prevent U.S. Bancorp's dismissal from this case.