# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *McCarthy v. Omega Psi Phi Fraternity, Inc.*, 2011 IL App (1st) 092950

---

| | |
|---|---|
| Appellate Court Caption | GERALD S. McCARTHY, Plaintiff-Appellee, v. OMEGA PSI PHI FRATERNITY, INC.; and TENTH DISTRICT, an Unincorporated Association, Defendants-Appellants. |
| District & No. | First District, First Division<br>Docket No. 1–09–2950 |
| Filed | June 30, 2011 |
| Rehearing denied | July 28, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The amended complaints adding defendants as parties to plaintiff's action for defamation *per se* based on false statements made regarding his involvement in fraternity hazing activities were barred by the statute of limitations, notwithstanding plaintiff's contention that the amended complaints related back to his timely filed original complaint pursuant to section 2–616(d) of the Code of Civil Procedure, since plaintiff did not make a mistake as to defendants' identity and there was no concealment of defendants' identity. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 03–M1–0018637; the Hon. Pamela E. Hill Veal, Judge, presiding. |
| Judgment | Reversed. |

| Counsel on Appeal | Hinshaw & Culbertson LLP, of Chicago (Marcos Reilly, of counsel), for appellants. |
|---|---|
| | Law Office of James E. Taylor, P.C., of Chicago (James E. Taylor, of counsel), for appellee. |
| Panel | JUSTICE LAMPKIN delivered the judgment of the court, with opinion. Presiding Justice Hall and Justice Rochford concurred in the judgment and opinion. |

## OPINION

¶ 1     After a bench trial, defendants Omega Psi Phi Fraternity, Inc., and Tenth District were found liable for defamation *per se* of plaintiff, Gerald McCarthy. Although defendants raised a number of issues on appeal, the dispositive issue is whether plaintiff's amended complaints adding defendants were barred by the statute of limitations. The resolution of this issue depends on whether plaintiff made a mistake concerning the identity of the proper party, so that plaintiff's fourth and fifth amended complaints related back to his timely filed complaint. Based on the following, we reverse the judgment the trial court entered in favor of plaintiff.

¶ 2                          BACKGROUND

¶ 3     Omega Psi Phi is a national fraternity composed of undergraduate and graduate members both on and off college campuses. The fraternity is divided into districts and is run by elected and appointed officials. The Tenth District oversees Chicago. The Sigma Omega chapter of the fraternity is located in Chicago.

¶ 4     Plaintiff became a member of the fraternity in 1982. Plaintiff has held various elected and appointed positions within the organization. During the time at issue, plaintiff was the first vice district representative of the Tenth District. Outside of the fraternity, plaintiff is an attorney and a certified public accountant.

¶ 5     Plaintiff campaigned for the position of Tenth District representative in the April 11, 2003 election. Plaintiff ran against the incumbent, Dwight Pointer. Pointer became a member of the fraternity in 1976 and has held various elected and appointed positions within the organization. Plaintiff ultimately lost the election and withdrew from the fraternity shortly thereafter. Plaintiff's defamation claim is based on a belief that defendants encouraged Pointer to disseminate false information regarding plaintiff's involvement in illegal hazing activities in order to sabotage plaintiff's campaign for district representative. We summarize the relevant events necessary to decide this case.

¶ 6     In the summer of 2001, allegations were raised regarding hazing incidents that took place in January 2001. Although not the focus of the allegations, plaintiff's name was mentioned as having been involved in the illegal activities. Following an investigation, the allegations were deemed unfounded as to plaintiff. The investigations, however, did result in sanctions to some fraternity members. In relevant part, Maceo Rainey and John Spellers were expelled from the fraternity.

¶ 7     On March 29, 2003, Pointer, in his "office" as district representative, received a videotape from a fellow fraternity member, Johnny Lynch,[1] in relation to the January 2001 "illegal intake process." According to a letter written by Lynch and sent to Pointer, Lynch ran into Rainey in June 2002 and Rainey said he was innocent of the charges that caused his expulsion. Nearly nine months later, Rainey sent Lynch the videotape allegedly documenting the illegal intake proceedings at issue. The videotape seemingly depicted a party following a nonsanctioned intake ceremony that took place on January 13, 2001. Plaintiff appeared on the videotape. Along with the videotape, Rainey and Spellers included a memorandum describing the events at issue. In the memorandum, Rainey and Spellers claimed they were introduced to a group of men interested in joining the fraternity outside the sanctioned channels of initiation and were involved in the planning of pledge sessions because "if they did not have a pledge process, they would be missing out on chapter history and would be deprived of basic frat knowledge, just in case they ran into real Ques, who pledged underground." According to the memorandum, plaintiff was kept abreast of the pledges' progress and set the date for their intake as January 13, 2001, at 1 a.m.

¶ 8     After receiving the information, Pointer contacted national officials, namely, the grand counselor and the grand basileus, who recommended that the Sigma Omega chapter be suspended pending an investigation. Pointer also sought the advice of a past district representative, who agreed with the recommendation.

¶ 9     On April 1, 2003, Pointer, as district representative, suspended plaintiff and 11 other fraternity members, along with the Sigma Omega chapter, pending an investigation into the "illegal intake process." An e-mail was sent to Glen Brewer, the basileus of the Sigma Omega chapter, indicating the same. Notice of the suspension was also sent to "all Fraternity officials needing to know ***, *i.e.*, all Chapter Presidents, Members of the District Council, and Grand Officers." Someone on the circulation list released the suspension information to the publisher of "Que-Nections," a newsgroup for fraternity members. An investigative committee was formed to address the allegations. Review of the videotape demonstrated that the contents depicted actually took place during two separate events, one being the illegal intake party on January 13, 2001, and the other being an unrelated party from January 30, 2000. The tape lasted approximately 4 1/2 minutes and was of extremely poor quality. Rainey admitted to the committee that he combined two different events on the tape.

¶ 10    Following the investigation, on April 7, 2003, plaintiff's suspension was lifted. Plaintiff was notified by Pointer via letter on Omega Psi Phi stationery. The letter was signed by

---

[1]Lynch held the position of Indiana state representative, which was also a part of the Tenth District.

Pointer as Tenth District representative. The letter indicated that carbon copies were sent to the grand basileus, the grand counselor, and the district counselor.

¶ 11    On July 9, 2003, plaintiff filed an initial complaint for slander, libel, and defamation *per se* against Maceo Rainey and John Spellers, alleging they maliciously and wrongfully doctored evidence and gave false statements regarding plaintiff's involvement in fraternity hazing activities. Plaintiff alleged Rainey and Spellers caused the false statements to be published in an e-mail newsletter. Plaintiff alleged that his reputation was greatly injured by the publication of the false statements. Rainey and Spellers filed a joint *pro se* motion to dismiss the complaint contending the lawsuit was "frivolous," had "no legal basis," and failed to "show any evidence of slander or defamation" on the part of Rainey and Spellers. Although the trial court's order does not appear in the record, the court seemingly denied the motion to dismiss because Rainey and Spellers filed a joint *pro se* answer to plaintiff's complaint on October 21, 2003.

¶ 12    On November 12, 2003, plaintiff requested leave to amend his complaint to add an additional defendant. Leave was granted. On November 26, 2003, plaintiff filed an amended complaint for slander, libel, and defamation *per se* against Rainey, Spellers, and Pointer. The underlying allegations remained the same as in the initial complaint with the additional claim that Pointer conspired with Rainey and Spellers to "maliciously injure the plaintiff in his good name and reputation, by doctoring evidence and giving false statements of the plaintiff['s] involvement in hazing activities" thereby leading to plaintiff's suspension from "the Omega Psi Phi Fraternity." In the amended complaint, plaintiff added facts such that Pointer was the district representative of the Tenth District of Omega Psi Phi and, at the time of the offense, Rainey and Spellers had been expelled from the fraternity for alleged participation in illegal intake or hazing activities.

¶ 13    Pointer filed a joint motion to dismiss the amended complaint pursuant to section 2–619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2–619.1 (West 2002)) arguing that plaintiff failed to state a cognizable cause of action and an affirmative matter, namely, conditional privilege, defeated the claim. Rainey and Spellers jointly filed a *pro se* motion to dismiss pursuant to section 2–615 of Code (735 ILCS 5/2–615 (West 2002)) for failing to state a cognizable claim.[2] On July 8, 2004, both motions to dismiss were withdrawn and plaintiff was given 28 days to amend his complaint.

¶ 14    On August 11, 2004, plaintiff filed a second amended complaint for slander, libel, and defamation *per se* against Pointer, Rainey, and Spellers. On August 13, 2004, Pointer filed a motion to strike plaintiff's second amended complaint for failing to file the pleading within the 28 days ordered by the trial court and failing to request an extension. The motion to strike was denied. Pointer, Rainey, and Spellers each separately filed motions to dismiss the second amended complaint pursuant to section 2–615 of the Code for failing to state a cause of action for defamation. Pointer's motion was granted, while Rainey's and Spellers' motions were denied. On December 16, 2004, the trial court granted plaintiff leave to amend his

[2]The record on appeal, however, includes a *pro se* answer filed by Rainey and Spellers prior to the motion to dismiss.

complaint yet again.

¶ 15    On January 12, 2005, plaintiff requested additional time to file a third amended complaint. The request was granted. On January 27, 2005, plaintiff filed a third amended complaint for slander, libel, and defamation *per se* against Pointer, Rainey, and Spellers. Pointer, Rainey, and Spellers each separately filed motions to dismiss the third amended complaint pursuant to section 2–615 of the Code for failure to state a claim. The motions to dismiss were denied and Pointer, Rainey, and Spellers were ordered to answer plaintiff's third amended complaint. Answers were filed and discovery ensued.

¶ 16    Pointer and plaintiff, on July 24, 2006, and December 21, 2006, respectively, filed cross-motions for summary judgment. Meanwhile, on November 15, 2006, Rainey and Spellers entered into settlement agreements with plaintiff and were subsequently dismissed from the lawsuit. On March 13, 2007, the cross-motions for summary judgment were denied. In its order, the trial court stated: "Judge specifically finds that the statements made by Pointer were not made in good faith."

¶ 17    The case proceeded to trial on June 8, 2007, June 15, 2007, August 10, 2007, and August 17, 2007. At the close of evidence, the parties were given until December 14, 2007, to submit written closing arguments.

¶ 18    In the interim, on September 24, 2007, plaintiff requested leave to file a fourth amended complaint. In his motion to amend, plaintiff requested leave to add Omega Psi Phi as a defendant pursuant to section 2–616(d) of the Code (735 ILCS 5/2–616(d) (West 2006)). Plaintiff argued that he did not become aware of the fraternity's involvement in plaintiff's suspension until the trial. Plaintiff added that, at trial, a member of the fraternity participated in the case as if Omega Psi Phi was a named defendant and the fraternity paid Pointer's legal fees.

¶ 19    On October 1, 2007, the trial court granted plaintiff leave to add Omega Psi Phi as a defendant. The trial court dismissed Pointer individually with prejudice. The court additionally granted plaintiff leave to file a motion asking to add Pointer as a defendant in his capacity as an agent for Omega Psi Phi with oral arguments on the motion set for November 20, 2007.

¶ 20    Plaintiff filed his fourth amended complaint on November 16, 2007, alleging slander, libel, and defamation *per se* against Pointer, as the Tenth District representative, and defendants for the first time. Plaintiff alleged that defendants encouraged Pointer to suspend plaintiff. On November 20, 2007, the trial court directed plaintiff to remove Pointer from the caption and pleadings as a named defendant and gave plaintiff 21 days to file a fifth amended complaint.[3] In a separate order, the trial court said: "IT IS HEREBY ORDERED that as to the dismissal of Defendant Pointer, as an individual, in the Order of October 1, 2007, pursuant to Supreme Court Rule 304(a), the Court finds no just cause to delay enforcement of or appeal from that ruling."

¶ 21    On December 14, 2007, plaintiff filed his fifth amended complaint for defamation *per*

___

[3]A transcript of the scheduled oral argument does not appear in the record.

*se* against defendants alleging that he suffered "monetary damages because the funds that he expended to campaign for election were for naught, as the election was tainted by the dissemination of false information sanctioned by [defendants]."

¶ 22    On January 16, 2008, defendants filed their appearances in the case. On February 8, 2008, defendants filed an answer and affirmative defenses arguing, in relevant part, that plaintiff's defamation claim was barred by the statute of limitations and the doctrine of *res judicata*. The parties agreed to submit the case to the court for a decision based on the record of the original trial. No new evidence was submitted.

¶ 23    On May 27, 2009, the trial court found defendants liable for defamation *per se* and awarded plaintiff $5,800 in actual damages. The court did not address defendants' affirmative defenses. On October 16, 2009, the trial court awarded plaintiff $148,132.22 in punitive damages.

¶ 24                                        ANALYSIS

¶ 25    We address whether the relation-back doctrine applied to plaintiff's amended complaints adding defendants as parties to overcome defendants' statute of limitations affirmative defense.

¶ 26    An assertion that a claim is barred by the statute of limitations is a matter properly raised by a section 2–619 motion to dismiss. *Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 352, 882 N.E.2d 583 (2008). Although defendants did not file a motion to dismiss, the question before the trial court was whether the addition of defendants related back to the timely filed complaint under section 2–616(d) so as to avoid the affirmative bar of the statute of limitations. *Id*. at 352-53. Under the circumstances described, the appropriate standard of review is *de novo*. *Id*. at 353.

¶ 27    Defamation actions must be commenced within "one year next after the cause of action accrued." 735 ILCS 5/13–201 (West 2006). Defendants were added to the complaint in November 2007 and the alleged defamatory action took place on April 1, 2003. It is clear, and plaintiff does not disagree, that he did not bring the defamation action against these defendants within the statute of limitations.

¶ 28    Section 2–616(d) provides a method by which an amended complaint adding a party can relate back to an earlier pleading. Section 2–616(d) provides:

> "A cause of action against a person not originally named a defendant is not barred by lapse of time under any statute or contract prescribing or limiting the time within which an action may be brought or right asserted, if all the following terms and conditions are met: (1) the time prescribed or limited had not expired when the original action was commenced; (2) the person, within the time that the action might have been brought or the right asserted against him or her plus the time for service permitted under Supreme Court Rule 103(b), received such notice of the commencement of the action that the person will not be prejudiced in maintaining a defense on the merits and knew or should have known that, *but for a mistake concerning the identity of the proper party*, the action would have been brought against him or her; and (3) it appears from the original and amended pleadings that

the cause of action asserted in the amended pleading grew out of the same transaction or occurrence set up in the original pleading, even though the original pleading was defective in that it failed to allege the performance of some act or the existence of some fact or some other matter which is a necessary condition precedent to the right of recovery when the condition precedent has in fact been performed, and even though the person was not named originally as a defendant." (Emphasis added.) 735 ILCS 5/2–616(d) (West 2006).

¶ 29     Before examining the requirements of section 2–616(d), we assess whether the section applies at all by determining whether plaintiff made a mistake concerning the identity of the proper party. *Pruitt v. Pervan*, 356 Ill. App. 3d 32, 36, 825 N.E.2d 299 (2005).

¶ 30     Effective January 1, 2003, the legislature amended section 2–616(d) to impose more stringent requirements for amending complaints, similar to those required by the Federal Rules of Civil Procedure. *Id*. at 36 (citing *Compton v. Ubilluz*, 351 Ill. App. 3d 223, 233-34, 811 N.E.2d 1225 (2004)). We review postamendment case law to ascertain when a mistake in identity occurs.

¶ 31     In *Fassero v. Turigliatto*, 349 Ill. App. 3d 368, 811 N.E.2d 252 (2004), the plaintiff was injured in a car accident. The driver said his name was Thomas Turigliatto when, in fact, his name was Todd Turigliatto. Thomas was Todd's brother and the owner of the car. The plaintiff sued Thomas, but moved to amend her complaint when she learned the driver was actually Todd. *Id*. at 369-70. In order to determine whether the case involved a mistaken identity, the court examined the plaintiff's intent in bringing the lawsuit. *Id*. at 371. Based on the record, the court found the plaintiff intended to bring the suit against the driver because the complaint solely addressed the conduct of the driver, never alleging the owner breached a duty of care. *Id*. at 372. The court concluded the case was a classic example of mistaken identity. *Id*. Therefore, the amended complaint related back to the original complaint.

¶ 32     In comparison, in *Pruitt*, the record revealed the plaintiff wished to sue the property manager in a premises liability action for alleged negligence in the maintenance of a stairwell. *Pruitt*, 356 Ill. App. 3d at 37. Six months after the statute of limitations expired, the plaintiff learned that the owners of the property were responsible for the maintenance of the property. *Id*. At that point, the plaintiff requested leave to add the property owners as defendants. *Id*. Prior to that time, however, the plaintiff did not believe the owners had breached a duty of care. *Id*. This court concluded the facts did not demonstrate a case of mistaken identity under section 2–616(d) where the plaintiff "simply lacked information of the [owners'] involvement in maintaining the [p]roperty." *Id*.

¶ 33     After *Pruitt*, this court, in *Polites v. U.S. Bank National Ass'n*, 361 Ill. App. 3d 76, 836 N.E.2d 133 (2005), again relied on the intent of the plaintiff in bringing a lawsuit in order to determine if it was a case of mistaken identity. The plaintiff's complaint indicated his intent to sue the owner and operator of the branch office of a bank where he was injured. *Id*. at 83. The plaintiff initially directed his correspondence to U.S. Bank at the branch office where the injury occurred. *Id*. Like the plaintiff in *Fassero*, however, the plaintiff in *Polites* was led to believe the owner of the bank was U.S. Bancorp instead of U.S. Bank. *Id*. at 84.

As a result, the plaintiff did not name U.S. Bank as the defendant until 14 months after the statute of limitations expired. *Id*. at 81. This court concluded the case was one of mistaken identity and, therefore, the relation-back statute applied. *Id*. at 84.

¶ 34 Here, the record reveals plaintiff's intent was to sue Pointer for defaming him by disseminating false information and suspending him from the fraternity. Three years and seven months after the expiration of the statute of limitations and after the trial against Pointer, plaintiff requested to amend his complaint for a fourth time to add defendants because plaintiff claimed that he learned through the trial evidence that defendants encouraged Pointer to suspend plaintiff.

¶ 35 Plaintiff, like the plaintiff in *Pruitt*, decided 43 months after the statute of limitations had run that defendants were additionally responsible for the defamation action. Plaintiff, however, always had intended to sue Pointer for his participation in the alleged defamation, as evidenced by plaintiff's attempt to retain Pointer as a defendant in some capacity up until Pointer was finally dismissed on November 20, 2007. Therefore, this was not a case where, but for a mistake concerning the identity of defendants, plaintiff would not have sued Pointer. Clearly, plaintiff intended to sue whoever perpetuated the alleged falsehood, namely, Pointer.

¶ 36 Plaintiff intended to sue Pointer, Rainey and Spellers because plaintiff assumed they were liable for the alleged defamation. Plaintiff's failure to timely include defendants as additional parties for allegedly having encouraged plaintiff's suspension does not constitute a mistake concerning the identity of a proper party. Accordingly, section 2–616(d) does not apply in this case. Therefore, plaintiff's complaint is barred by the statute of limitations, and the trial court erroneously entered judgment in favor of plaintiff despite defendants' affirmative defense in their answer that plaintiff's defamation claim was barred by the statute of limitations.

¶ 37 Plaintiff argues that misrepresentations and concealed facts prevented him from learning defendants' identity. In particular, plaintiff argues that Pointer hid the fraternity's involvement in "perpetrating the publication of defamatory statements." The evidence, however, does not support plaintiff's argument.

¶ 38 At the time of the incident, plaintiff had been a member of the fraternity for approximately 21 years. He was vice district representative and had held numerous elected and appointed positions in the fraternity, including serving as basileus of several districts and as second vice district representative. He was aware of the fraternity's constitution and bylaws.

¶ 39 When the allegations against plaintiff first arose, the bylaws of the fraternity and Tenth District clearly provided that a district representative is to suspend any chapter located within the district, *subject* to the *approval* of the grand basileus, and to report the suspension to the grand keeper of records and seal. The grand basileus is the national head of the entire fraternity. Therefore, plaintiff was aware at the time of his suspension that, at the very least, the grand basileus had approved the suspension of his chapter, Sigma Omega, and that the grand keeper of records and seal had been informed of the actions taken.

¶ 40 Moreover, the record contains the letter informing plaintiff that his suspension had been

lifted. The letter was sent by Pointer in his capacity as district representative and was on fraternity stationery. The bottom of the letter indicates that carbon copies had been sent to the grand basileus, the grand counselor, and the district counselor. Accordingly, by April 7, 2003, at the latest, plaintiff was aware that the national fraternity directors had been involved in his suspension.

¶ 41 In arguing that Pointer fraudulently concealed defendants' involvement, plaintiff points to a deposition that does not appear in the record along with an answer to the third amended complaint and an answer to an interrogatory. Contrary to plaintiff's argument, review of the answer and interrogatory demonstrates that Pointer disclosed the fact that he consulted with other members of the fraternity prior to issuing plaintiff's suspension. Plaintiff cannot maintain his contention or any contention based on concealment of defendants' identity where no such concealment took place. Plaintiff's arguments regarding a violation of a fiduciary duty to disclose defendants' involvement, equitable estoppel, and conforming his pleading to the trial evidence, therefore, fail.

¶ 42                                    CONCLUSION

¶ 43 We conclude that plaintiff's fourth and fifth amended complaints did not relate back to his timely filed complaint pursuant to section 2–616(d) because he did not make a mistake concerning defendants' identity. Because section 2–616 was not applicable, defendants' affirmative defense of the statute of limitations applied to bar plaintiff's amended complaints adding defendants as parties. Accordingly, the trial court's judgment in favor of plaintiff is reversed.

¶ 44 Reversed.