# Illinois Official Reports

## Appellate Court

---

*Owens v. VHS Acquisition Subsidiary Number 3, Inc.*, 2017 IL App (1st) 161709

---

| | |
|---|---|
| Appellate Court Caption | ERIC OWENS, Plaintiff-Appellee, v. VHS ACQUISITION SUBSIDIARY NUMBER 3, INC., d/b/a Louis A. Weiss Memorial Hospital; VHS ACQUISITION SUBSIDIARY NUMBER 3, INC., d/b/a Vanguard Weiss Memorial Hospital; LEO DILAN, D.O.; AHMED RAZIUDDIN, M.D.; and SEEMA ELAHI, M.D., Defendants (Seema Elahi, M.D., Defendant-Appellant). |
| District & No. | First District, Fifth Division<br>Docket No. 1-16-1709 |
| Filed | March 31, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-L-013786; the Hon. Moira S. Johnson, Judge, presiding. |
| Judgment | Certified question answered. |
| Counsel on Appeal | Melissa A. Murphy-Petros, Michael L. Vittori, Michelle G. Berault, and William S. Cook, of Wilson Elser Moskowitz Edelman & Dicker LLP, of Chicago, for appellant.<br><br>Stephanie B. Rubin and Emilio E. Machado, of Rubin, Machado & Rosenblum, Ltd., of Chicago, for appellee. |

PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.
Justice Reyes concurred in the judgment and opinion.
Justice Lampkin dissented, with opinion.


**OPINION**

¶ 1     The instant interlocutory appeal arises from plaintiff Eric Owens's lawsuit against the defendant hospital and its doctors concerning plaintiff's care and treatment at the hospital's emergency room in 2011. Plaintiff initially named Dr. Ahmed Raziuddin as a defendant in the suit as the physician who treated him in the emergency room, based on Dr. Raziuddin's name appearing in the hospital's records as the treating physician. However, Dr. Raziuddin filed a motion to dismiss the lawsuit, claiming that he was not the physician who treated plaintiff and that Dr. Seema Elahi was actually the treating physician. Plaintiff then amended his complaint, adding Dr. Elahi as a defendant. Dr. Elahi then filed a motion to dismiss the complaint, arguing that the statute of limitations had expired. The trial court denied the motion to dismiss, finding that the amended complaint related back to the initial filing of the complaint, but certified the question for review pursuant to Illinois Supreme Court Rule 308 (eff. Jan. 1, 2015). We allowed Dr. Elahi's petition for leave to appeal and now answer the trial court's certified question in the affirmative. However, while we are able to answer the question of law presented in the certified question, the record of the case at bar is not sufficiently developed for us to determine the application of that law to the factual circumstances present in the instant case. Accordingly, our analysis provides a roadmap that may be used to answer this important question in the court below, as well as in the future, and the case is remanded back to the trial court.

¶ 2                                        BACKGROUND
¶ 3     On December 5, 2013, five days before the statute of limitations would have expired, plaintiff filed a complaint against the defendant hospital, Dr. Leo Dilan, and Dr. Ahmed Raziuddin, alleging negligence against each defendant and alleging that the named doctors were employees and/or agents of the defendant hospital. The complaint alleged that on December 10, 2011, and December 14, 2011, plaintiff was a patient in the hospital's emergency department, where he was evaluated and treated "for complaints of body aches, malaise, chills and other signs and symptoms of major illness." However, the complaint alleged that defendants failed to exercise reasonable care in providing medical care and treatment to plaintiff, causing plaintiff to be "severely and permanently injured and hospitalized during a later hospitalization at Swedish Covenant Hospital wherein he remained in critical condition from a pulmonary infection from pneumocystis jiroveci from which he sustained permanent damage and physical injury and will require continued medical care in the future." Specifically, the complaint alleged that Dr. Dilan had committed medical negligence in his care and treatment of plaintiff on December 10, 2011, and that Dr. Raziuddin had committed medical negligence in his care and treatment of plaintiff on December 14, 2011.

¶ 4 According to the record, the sheriff's office attempted service on Dr. Raziuddin on December 26, 2013, and on February 20, 2014, but was unsuccessful. On March 19, 2014, the trial court appointed a special process server, who was given until April 2, 2014, to serve Dr. Raziuddin. Dr. Raziuddin filed an appearance in the case on March 20, 2014, and filed an answer on May 13, 2014, denying the material allegations of the complaint. Specifically, Dr. Raziuddin denied that he provided medical care and services to plaintiff.

¶ 5 On June 30, 2014, Dr. Raziuddin filed a motion for dismissal claiming noninvolvement pursuant to section 2-1010 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1010 (West 2012)), claiming that Dr. Raziuddin "never saw the Plaintiff or provided any care or treatment to Plaintiff at all." The motion claimed that plaintiff's medical records "improperly list Dr. Raziuddin as the admitting physician on December 14, 2011 and attach a barcode to each page of that admission with his name identified." However, Dr. Raziuddin was one of two attending physicians on duty on December 14, 2011, and "believe[d] the Plaintiff was admitted and registered to him although he was never seen or treated by Dr. Raziuddin but by his colleague, Dr. Elahi."[1] Attached to Dr. Raziuddin's motion to dismiss was his affidavit, in which he averred that he never provided any care or treatment to plaintiff and that "I believe that the patient was registered under my name as I was one of two attending physicians on-shift at the time but that any care and treatment was provided by my colleague, Seema Elahi, M.D."

¶ 6 Plaintiff was granted leave to amend his complaint to add Dr. Elahi as a defendant and, on July 21, 2014, plaintiff filed an amended complaint. The amended complaint added Dr. Elahi as a defendant and added a claim of medical negligence against her. In the count directed at Dr. Elahi, the amended complaint alleged that on December 14, 2011, Dr. Elahi was a physician and surgeon practicing emergency medicine in the State of Illinois and that "[a]t all times herein, Defendant, SEEMA ELAHI M.D, was the agent, servant and/or employee of Defendant, WEISS." The amended complaint alleged that Dr. Elahi breached her duty to exercise reasonable care in providing medical treatment and care to plaintiff, causing him physical injury from a pulmonary infection.

¶ 7 On December 22, 2014, Dr. Elahi filed a motion to dismiss plaintiff's amended complaint pursuant to sections 2-619(a)(5) and 13-212(a) of the Code (735 ILCS 5/2-619(a)(5), 13-212(a) (West 2012)), arguing that plaintiff's cause of action was barred by the two-year statute of limitations set forth in section 13-212(a) of the Code.

¶ 8 In response, plaintiff argued that under section 2-616(d) of the Code (735 ILCS 5/2-616(d) (West 2012)), plaintiff's amended complaint related back to the filing of his original complaint. Plaintiff argued that he initially filed his complaint against "Weiss Hospital and the Emergency Room physicians identified in his medical records as being his attending physician on December 10th and December 14th." Plaintiff first learned of Dr. Elahi's involvement in plaintiff's care and treatment when Dr. Raziuddin filed his motion to dismiss for noninvolvement on June 30, 2014, which included the claim that plaintiff's records had been "mislabeled by an error of the hospital and that his handwriting or written signature does not appear anywhere on the records." Plaintiff then amended his complaint on July 21, 2014, to add Dr. Elahi and "alleg[e] the identical count against her that was previously plead[ed] in the Complaint at Law against the Defendant, AHMED RAZIUDDIN, M.D." Plaintiff argued that

___

[1]While the record on appeal does not contain the court order resolving this motion, the record indicates that the trial court granted it.

the amended complaint related back to the filing of the initial complaint because "Plaintiff was attempting to sue the Emergency Room physician who treated him on December 14, 2011, and because his medical records were mislabeled, mistakenly sued the wrong doctor." Plaintiff argued that Dr. Elahi should have been on notice that she was the correct defendant and, since the same counsel represented both her and Dr. Raziuddin, her counsel was fully up to date on the case and Dr. Elahi would not be prejudiced.

¶ 9    Attached to plaintiff's response was an exhibit consisting of six pages of plaintiff's medical records. Five of the six pages contain an admitting date of December 14, 2011, and Dr. Raziuddin's typed name as plaintiff's admitting doctor.[2] There is no doctor's signature on any of the six pages.

¶ 10    In her reply, Dr. Elahi argued that plaintiff did not make a mistake concerning Dr. Elahi's identity and, therefore, section 2-616(d) did not apply. Dr. Elahi argued that the hospital's emergency department medical records "clearly identify" Dr. Elahi as plaintiff's attending physician in no fewer than five places, and Dr. Elahi's signature was also present on a prescription that was tendered to plaintiff at the time of his discharge. Thus, Dr. Elahi argued that plaintiff had offered no reason as to why he failed to name Dr. Elahi in his original complaint.

¶ 11    Dr. Elahi further argued that, even if section 2-616(d) applied, plaintiff had not satisfied all of its elements. Dr. Elahi argued that she was not served until September 16, 2014, nine months after the statute of limitations has expired, and therefore did not have actual knowledge of the lawsuit within the statutory period and further argued that she would be prejudiced by being added as an additional defendant.

¶ 12    Attached to Dr. Elahi's reply was an exhibit that purported to be three additional pages of plaintiff's medical records from his December 14, 2011, visit; all identifying information is redacted from the pages. On each page, there is a space for the signature of the attending physician, and a handwritten signature appears in that space; the signature is illegible. On the first page and the third page, there are also spaces for the attending physician's printed name; a more legible name is handwritten in these two spaces but is still difficult to read.

¶ 13    On March 5, 2015, the trial court entered an order denying Dr. Elahi's motion to dismiss plaintiff's amended complaint.

¶ 14    On August 10, 2015, Dr. Elahi filed a motion to certify a question under Illinois Supreme Court Rule 308 (eff. Jan. 1, 2015) concerning whether the amended complaint related back to the filing of the initial complaint. On August 19, 2015, Dr. Elahi's motion was denied without prejudice. The court found that Dr. Elahi's proposed question was conclusory and not framed as a legal question, but that "[i]f the defendant can come up with a legal question that they want to have the appellate court review," the trial court would review it.

¶ 15    On September 9, 2015, Dr. Elahi filed an amended motion to certify a question under Rule 308, which was denied on October 20, 2015, without prejudice due to the manner in which the question was framed. On May 11, 2016, Dr. Elahi filed a second amended motion to certify a question under Rule 308. On May 26, 2016, the trial court granted Dr. Elahi's motion and certified the following question for appellate review:

---

[2]Four of the pages contain the admitting date and doctor information in a barcode that is affixed to the top corner of the page. The page that does not contain this information has a space for a "Patient Label" in that same area but one is not affixed.

- 4 -

"Whether an Amended Complaint against a new defendant filed after the applicable statute of limitations has expired relates back to plaintiff's original Complaint where (a) the new defendant's signature was in the medical records in plaintiff's possession prior to filing his original Complaint, and (b) the new defendant had no knowledge that the action would have been brought against her, but for a mistake concerning her identity."

¶ 16    On July 19, 2016, we allowed Dr. Elahi's petition for leave to appeal, and this appeal follows.

¶ 17                                                 ANALYSIS

¶ 18    Illinois Supreme Court Rule 308 (eff. Jan. 1, 2015) provides a remedy of permissive appeal from interlocutory orders where the trial court has deemed that they involve a question of law as to which there is substantial ground for difference of opinion and where an immediate appeal from the order may materially advance the ultimate termination of the litigation. We apply a *de novo* standard of review to legal questions presented in an interlocutory appeal brought pursuant to Rule 308. *Simmons v. Homatas*, 236 Ill. 2d 459, 466 (2010). *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 19    Additionally, the appeal in the case at bar arises from the trial court's denial of Dr. Elahi's motion to dismiss the amended complaint under section 2-619 of the Code. A motion to dismiss under section 2-619 admits the legal sufficiency of all well-pleaded facts but allows for the dismissal of claims barred by an affirmative matter defeating those claims or avoiding their legal effect. *Janda v. United States Cellular Corp.*, 2011 IL App (1st) 103552, ¶ 83 (citing *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006)). When reviewing a motion to dismiss under section 2-619, "a court must accept as true all well-pleaded facts in plaintiffs' complaint and all inferences that can reasonably be drawn in plaintiffs' favor." *Morr-Fitz, Inc. v. Blagojevich*, 231 Ill. 2d 474, 488 (2008). Additionally, a cause of action should not be dismissed under section 2-619 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to relief. *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 277-78 (2003). For a section 2-619 dismissal, our standard of review is *de novo*. *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 579 (2006); *Morr-Fitz, Inc.*, 231 Ill. 2d at 488. As noted, *de novo* consideration means we perform the same analysis that a trial judge would perform. *Khan*, 408 Ill. App. 3d at 578.

¶ 20    On appeal, we are asked to consider whether plaintiff's amended complaint relates back to the date of filing of the original complaint under the facts and circumstances of this case. Amendments to pleadings are governed by section 2-616 of the Code. With respect to amending a complaint to add a defendant, section 2-616(d) provides:

"A cause of action against a person not originally named a defendant is not barred by lapse of time under any statute or contract prescribing or limiting the time within which an action may be brought or right asserted, if all the following terms and conditions are met: (1) the time prescribed or limited had not expired when the original action was commenced; (2) the person, within the time that the action might have been brought or the right asserted against him or her plus the time for service permitted under Supreme Court Rule 103(b), received such notice of the commencement of the action that the person will not be prejudiced in maintaining a defense on the merits and knew or

- 5 -

should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him or her; and (3) it appears from the original and amended pleadings that the cause of action asserted in the amended pleading grew out of the same transaction or occurrence set up in the original pleading, even though the original pleading was defective in that it failed to allege the performance of some act or the existence of some fact or some other matter which is a necessary condition precedent to the right of recovery when the condition precedent has in fact been performed, and even though the person was not named originally as a defendant. For the purpose of preserving the cause of action under those conditions, an amendment adding the person as a defendant relates back to the date of the filing of the original pleading so amended." 735 ILCS 5/2-616(d) (West 2012).

In the case at bar, the first and third elements are not contested. The statute of limitations had not expired at the time of the filing of plaintiff's initial complaint, and the cause of action in the amended pleading arose from the same occurrence as that alleged in the initial complaint. Thus, our analysis centers on the second element: whether "the person, within the time that the action might have been brought or the right asserted against him or her plus the time for service permitted under Supreme Court Rule 103(b), received such notice of the commencement of the action that the person will not be prejudiced in maintaining a defense on the merits and knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him or her." 735 ILCS 5/2-616(d)(2) (West 2012).

¶ 21        The certified question on appeal concerns two parts of section 2-616(d)'s second element: whether there was a "mistake" as contemplated by section 2-616(d) where Dr. Elahi's signature was contained in plaintiff's medical records; and whether Dr. Elahi received the appropriate notice of the commencement of the action where she alleges that she had no actual notice that plaintiff intended to file suit against her. We consider each issue in turn.

¶ 22                                          I. Mistake
¶ 23                             A. Analysis of Section 2-616(d)
¶ 24        As an initial matter, we must discuss Dr. Elahi's suggestion that there is confusion over the proper analysis to use in considering whether there is a mistake for the purposes of relation back under section 2-616(d), namely, whether a court should look to the plaintiff's intent in filing the original lawsuit or the defendant's knowledge of any alleged mistake. However, an examination of recent case law shows that our courts' analysis has been consistent for several years.

¶ 25        In *Borchers v. Franciscan Tertiary Province of the Sacred Heart, Inc.*, 2011 IL App (2d) 101257, ¶ 42, the Second District explained the history of section 2-616(d). "The relation-back doctrine contained in section 2-616(d) has been in existence for many years. For much of that time it required the plaintiff to show, among other things, that the failure to name the new defendant in the initial complaint was 'inadvertent.' [Citation.] The focus in many of the cases applying the doctrine was thus on what the plaintiff knew or should have known at the time the complaint was filed and the plaintiff's diligence in seeking to amend the complaint. [Citation.]" *Borchers*, 2011 IL App (2d) 101257, ¶ 42. However, in 2002, section 2-616(d) was amended, removing the inadvertence requirement and replacing it with the language currently at issue in the instant appeal that a mistake was made as to the identity of the defendant. After examining the legislative history of the amendment, the court in *Compton v. Ubilluz*, 351 Ill.

App. 3d 223, 233 (2004), found that "[f]rom this history, we can see that the legislative intent was simply to bring the Code into line with the Federal Rules of Civil Procedure."

¶ 26     "The language of the amended section 2-616(d) is substantially similar to that of Rule 15(c) [of the Federal Rules of Civil Procedure (Fed. R. Civ. P. 15(c))], which provides that an amended pleading naming a new party will relate back to the filing date of the original pleading if the claims or defenses asserted in the amended pleading are the same as those in the original and, within the limitations period for the claim plus the time allowed for service of the pleading, the new party (1) 'received such notice of the action that it will not be prejudiced in defending on the merits,' and (2) 'knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.' [Citation.]" *Borchers*, 2011 IL App (2d) 101257, ¶ 42.

¶ 27     "Where a provision of the Illinois Code of Civil Procedure is patterned after a Federal Rule of Civil Procedure, federal cases interpreting the federal rule are persuasive authority with regard to the application of the Illinois provision." *Borchers*, 2011 IL App (2d) 101257, ¶ 45. Thus, with respect to section 2-616(d), due to the similarities between section 2-616(d) and Rule 15(c), "Illinois courts have looked to federal precedent interpreting Rule 15(c)(1)(C) for guidance in interpreting section 2-616(d)." *Zlatev v. Millette*, 2015 IL App (1st) 143173, ¶ 24; see, *e.g.*, *Borchers*, 2011 IL App (2d) 101257, ¶ 45; *Maggi v. RAS Development, Inc.*, 2011 IL App (1st) 091955, ¶ 28; see also *Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 358 (2008) (in interpreting a different subsection of section 2-616, "find[ing] it significant" that prior Illinois Supreme Court cases had relied on federal law for guidance in interpreting the subsection, since its language was very similar to that of Rule 15(c)).

¶ 28     While there has been no Illinois Supreme Court case interpreting section 2-616(d) since the 2002 amendment that added the language at issue in the instant appeal, there has been a United States Supreme Court case squarely addressing the same language. Given the similarity between the federal rule and section 2-616(d), most Illinois courts analyzing section 2-616(d) have relied on this case in interpreting the state statute.

¶ 29     In *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 547 (2010), the United States Supreme Court resolved a split among federal courts concerning the breadth of Rule 15(c)(1)(C)(ii) which, like section 2-616(d), provided that relation back would only be available if the party to be added by an amendment " 'knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.' [Citation.]" The Court found that the court of appeals had erred when it focused on the plaintiff's knowledge when determining whether there was a mistake; instead, the Court indicated that "[t]he question under Rule 15(c)(1)(C)(ii) is not whether [the plaintiff] knew or should have known the identity of [the newly added party] as the proper defendant, but whether [the newly added party] knew or should have known that it would have been named as a defendant but for an error. Rule 15(c)(1)(C)(ii) asks what the prospective *defendant* knew or should have known during the [period for service], not what the *plaintiff* knew or should have known at the time of filing her original complaint." (Emphases in original.) *Krupski*, 560 U.S. at 548. The Court further explained that "[i]nformation in the plaintiff's possession is relevant only if it bears on the defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity." *Krupski*, 560 U.S. at 548. Applying these principles to the case before it, the *Krupski* Court found that "[b]ecause the complaint made clear that [the plaintiff] meant to sue the company that 'owned, operated, managed, supervised and controlled' the ship on which

she was injured," the newly added defendant should have known that it was not named as a defendant in the complaint only because of the plaintiff's misunderstanding about which entity was in charge of the ship. *Krupski*, 560 U.S. at 554-55.

¶ 30    Following the United States Supreme Court's decision in *Krupski*, our Illinois appellate courts have adopted the same analysis. See, *e.g.*, *Zlatev*, 2015 IL App (1st) 143173, ¶ 31 (finding *Krupski* "persuasive in interpreting Illinois's relation-back provision"); *Mann v. Thomas Place, L.P.*, 2012 IL App (1st) 110625, ¶ 25 (relying on *Krupski* to find that the relevant issue with respect to knowledge is not what the plaintiffs knew but what the defendants knew); *Borchers*, 2011 IL App (2d) 101257, ¶ 52 (finding that "the principles stated in *Krupski* apply equally here"); *Maggi*, 2011 IL App (1st) 091955, ¶¶ 33, 37 (relying on *Krupski* to find that there was a mistake and that the proper focus was the defendant's knowledge of the mistake). "Thus, when evaluating a mistake under section 2-616(d), the proper focus is not on whether plaintiff made a reasonable mistake, but whether or not the defendant could reasonably believe that plaintiff had made a mistake in not naming the defendant in the initial complaint." *Zlatev*, 2015 IL App (1st) 143173, ¶ 31. A "plaintiff's intent in filing the original complaint is relevant only to the extent that it sheds light on whether the prospective defendant was reasonable in concluding that the plaintiff had made a mistake when filing the initial complaint." *Zlatev*, 2015 IL App (1st) 143173, ¶ 37. This interpretation of the "mistake" requirement, along with the requirements for notice and a lack of prejudice, strikes the proper balance between respecting statutes of limitations while adhering to the fundamental preference that disputes be decided on their merits. *Zlatev*, 2015 IL App (1st) 143173, ¶¶ 32-33. As we noted in *Zlatev*: "If a party is aware of a lawsuit arising out of a set of facts in which he was involved, and if that party knows or should know that the only reason he was not sued was due to a mistake on the plaintiff's part, and if the notice of this lawsuit is sufficient that the party has not been prejudiced in his ability later to defend that suit on the merits, that party is hard-pressed to claim unfair treatment when the plaintiff later discovers the mistake and sues him. If anything, that party was lucky to have avoided the suit when it was originally filed." *Zlatev*, 2015 IL App (1st) 143173, ¶ 33.

¶ 31    We note that, while some courts have expressly considered the issue of whether there was a mistake as a threshold issue prior to determining whether the requirements of section 2-616(d) were satisfied, we do not read such an analysis as imposing any additional requirements or in any way departing from the language of section 2-616(d), as Dr. Elahi seems to believe. Section 2-616(d) applies, by its clear terms, only to situations in which there is a "mistake concerning the identity of the proper party." 735 ILCS 5/2-616(d)(2) (West 2012). Thus, in cases where there was no such mistake, the section 2-616(d) analysis would not apply. We see no inconsistency or error for an appellate court to discuss the dispositive issue first, especially where the conclusion is that there was no mistake. See, *e.g.*, *McCarthy v. Omega Psi Phi Fraternity, Inc.*, 2011 IL App (1st) 092950, ¶ 36 (finding that there was no mistake and, therefore, section 2-616(d) did not apply); *Mann*, 2012 IL App (1st) 110625, ¶¶ 22-23 (same).

¶ 32    We further see no merit to Dr. Elahi's attempt to sow confusion by pointing to statements in certain cases that appear to focus on the plaintiff's intent. For instance, Dr. Elahi points to the *Zlatev* court's finding that a plaintiff's lack of knowledge regarding a party's involvement in the wrongdoing may constitute a mistake for purposes of section 2-616(d) (see *Zlatev*, 2015 IL App (1st) 143173, ¶ 56), arguing that in making such a finding, the *Zlatev* court "made the analysis more puzzling by reaching seemingly contradictory rulings." However, the finding

Dr. Elahi points to was an answer to a certified question that specifically asked the court to consider whether a plaintiff's lack of knowledge could constitute a mistake. *Zlatev*, 2015 IL App (1st) 143173, ¶ 49. Furthermore, this finding was based on one made by the *Krupski* Court, as the *Zlatev* court pointed out, and had been adopted by the Illinois Appellate Court in both *Maggi* and *Borchers*. See *Zlatev*, 2015 IL App (1st) 143173, ¶ 51. As the *Krupski* Court noted, "[i]nformation in the plaintiff's possession is relevant only if it bears on the defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity. For purposes of that inquiry, it would be error to conflate knowledge of a party's existence with the absence of mistake. *** That a plaintiff knows of a party's existence does not preclude her from making a mistake with respect to that party's identity." *Krupski*, 560 U.S. at 548-49. Thus, a plaintiff's knowledge, or lack thereof, is relevant to the issue of whether there was a mistake, but the discussion of such knowledge still occurs in the context of determining what the defendant's understanding was prior to the filing of the amended complaint.

¶ 33                              B. Mistake as to Treating Doctor

¶ 34        Turning, then, to the application of the law to the instant case, we must consider the first part of the certified question, which asks whether section 2-616(d) can apply even if Dr. Elahi's signature appeared in plaintiff's medical records. Our answer to this question is that it can. Dr. Elahi's position is that, "[i]f the newly-added defendant's signature is in the medical records and plaintiff had possession of them before filing the original complaint, the plaintiff had sufficient information to name the defendant in the initial complaint. In other words, if the plaintiff knew or should have known about the new defendant's role all along, there is no mistaken identity, just a mistake by plaintiff in not naming the defendant in the first place." We do not find this argument persuasive. Furthermore, in the case at bar, the signature Dr. Elahi points to was illegible and Dr. Raziuddin was repeatedly listed on the records as the treating physician.

¶ 35        First, as the Supreme Court noted, the applicable rule "asks what the prospective *defendant* knew or should have known during the [period for service of process], not what the *plaintiff* knew or should have known at the time of filing her original complaint. Information in the plaintiff's possession is relevant only if it bears on the defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity." (Emphases in original.) *Krupski*, 560 U.S. at 548. Thus, the question is not what plaintiff knew, but what Dr. Elahi knew or should have known.

¶ 36        In determining whether there has been a mistake, we may examine the allegations of the original complaint as objective manifestations of the plaintiff's intent in filing the lawsuit. See, *e.g.*, *Maggi*, 2011 IL App (1st) 091955, ¶ 33 (looking to the language of the complaint); *Krupski*, 560 U.S. at 554-55 ("Because the complaint made clear" that the plaintiff meant to sue the company that owned, operated, managed, supervised, and controlled the ship, the defendant should have known that it was not named only because the plaintiff made a mistake as to the proper party's identity). In the case at bar, plaintiff's original complaint alleged that "[o]n December 14, 2011 and thereafter, Defendant, AHMED RAZIUDDIN M.D., provided medical care and services to the Plaintiff, ERIC OWENS" and owed plaintiff a duty to exercise reasonable care in providing him medical care and treatment. However, the complaint alleged that Dr. Raziuddin failed to do so by "[c]arelessly and negligently provid[ing] treatment and/or care to the Plaintiff that was below the applicable standard of care" by failing to take a proper

history of plaintiff's HIV status, failing to evaluate or inquire as to plaintiff's CD4+ count, and failing to properly examine and diagnose plaintiff's pulmonary infection, as well as "[c]arelessly and negligently discharg[ing] the Plaintiff" and being "otherwise careless and negligent in the emergency room diagnosis and treatment of the Plaintiff." Thus, from the allegations of the complaint, it is clear that plaintiff was filing suit against the physician who treated him in the emergency room on December 14, 2011, and believed that Dr. Raziuddin was that physician. Dr. Elahi, the actual physician who treated plaintiff on December 14, 2011, in the emergency room, accordingly should have known[3] that she was not named in the original complaint only because of plaintiff's mistake as to the name of the doctor who treated him.

¶ 37        Furthermore, we cannot ignore the fact that the record reveals that the reason that plaintiff named Dr. Raziuddin as his physician was because Dr. Raziuddin's name was listed on plaintiff's medical records as his doctor on the date at issue by the hospital staff. In other words, it was the hospital itself which misled plaintiff and lulled him into believing that Dr. Raziuddin was his treating physician. Dr. Raziuddin's typed name was included as plaintiff's physician on a hospital printout containing "Admit Information," and was included on a barcode of plaintiff's patient information that was affixed to his medical records. Thus, the hospital's official records led plaintiff to believe that Dr. Raziuddin was, in fact, the doctor who treated him. Dr. Elahi points to the fact that her name "appears in the medical records from that day" as evidence that plaintiff purposely chose not to file suit against her. However, these are all places in which her name is handwritten and illegible. Even on the pages that contain spaces for the attending physician's printed name, the handwritten name is still difficult to read.

¶ 38        Moreover, "[t]hat a plaintiff knows of a party's existence does not preclude her from making a mistake with respect to that party's identity." *Krupski*, 560 U.S. at 549. Thus, even if plaintiff had been able to read Dr. Elahi's name in the few places it appears, that does not mean that plaintiff would necessarily have known that Dr. Elahi was his treating physician as a result of the hospital's wrongful printout and misleading information. Plaintiff's attorney would then have been confronted with a signature in a few places that, if readable, would be conflicting with the typed barcode affixed to his medical records that identified a different physician. "[A] plaintiff might know that the prospective defendant exists but nonetheless harbor a misunderstanding about his status or role in the events giving rise to the claim at issue, and she may mistakenly choose to sue a different defendant based on that misimpression. That kind of deliberate but mistaken choice does not foreclose a finding" of mistake. *Krupski*, 560 U.S. at 549. Thus, plaintiff's naming Dr. Raziuddin as a defendant does not foreclose a finding that there was a mistake, even if Dr. Elahi's name was identifiable in portions of plaintiff's medical records. Here, Dr. Elahi, as the treating physician in question, should have known that she was the person plaintiff would sue once she reviewed the medical records.[4]

---

[3]For purposes of the first part of the certified question, we do not consider whether Dr. Elahi had notice of the original complaint, as is necessary for section 2-616(d) to apply. We consider that question in our analysis of the second part of the certified question. Here, we simply consider whether the allegations of the complaint should have led her to believe that there had been a mistake.

[4]We take judicial notice that it is proper hospital protocol for a physician to review their medical records. However, Dr. Elahi's review of her records has not been developed in this case.

¶ 39    Dr. Elahi draws an analogy between her situation and that present in *McCarthy*, where we found that there was no mistake. However, the factual situations in the two cases are quite different. In *McCarthy*, the plaintiff filed suit against the district representative of a fraternity, alleging slander, libel, and defamation *per se* based on the representative's dissemination of false information and suspension of the plaintiff from the fraternity. After trial, and after the expiration of the statute of limitations, the plaintiff sought to amend the complaint to add the national fraternity and its regional district as defendants, claiming that he learned through the trial evidence that they had encouraged the representative to suspend the plaintiff. *McCarthy*, 2011 IL App (1st) 092950, ¶ 34. On appeal, we found that the omission of the newly added defendants had not been a mistake pursuant to section 2-616(d). *McCarthy*, 2011 IL App (1st) 092950, ¶ 35. We found that "the record reveals plaintiff's intent was to sue [the representative] for defaming him by disseminating false information and suspending him from the fraternity." *McCarthy*, 2011 IL App (1st) 092950, ¶ 34. We further noted that the plaintiff "decided 43 months after the statute of limitations had run that defendants were *additionally* responsible for the defamation action. Plaintiff, however, always had intended to sue [the representative] for his participation in the alleged defamation \*\*\*. Therefore, this was not a case where, but for a mistake concerning the identity of defendants, plaintiff would not have sued [the representative]. Clearly, plaintiff intended to sue whoever perpetuated the alleged falsehood, namely, [the representative]." (Emphasis added.) *McCarthy*, 2011 IL App (1st) 092950, ¶ 35.

¶ 40    In the case at bar, by contrast, there is no indication that plaintiff always intended to sue Dr. Raziuddin and only later decided that Dr. Elahi was additionally responsible. Instead, the allegations of the complaint make clear that plaintiff intended to sue the physician who treated him, who he mistakenly believed was Dr. Raziuddin based on false information contained in the hospital records. Once he discovered that Dr. Elahi was actually the physician who treated him, he sought to add her as a defendant. Again, Dr. Elahi should have known that plaintiff only named Dr. Raziuddin due to his misapprehension as to the identity of his treating doctor. Accordingly, we find that section 2-616(d) can apply even though Dr. Elahi's name, although illegible, appeared in plaintiff's medical records when the hospital indicated in the records that Dr. Raziuddin was the treating physician.

¶ 41                                                    II. Notice

¶ 42    The second part of the certified question asks whether section 2-616(d) applies where Dr. Elahi claims she had no actual knowledge that plaintiff would have filed suit against her absent a mistake as to the identity of his doctor. Specifically, the second part of the certified question asks "[w]hether an Amended Complaint against a new defendant filed after the applicable statute of limitations has expired relates back to plaintiff's original Complaint where \*\*\* (b) the new defendant had no knowledge that the action would have been brought against her, but for a mistake concerning her identity."

¶ 43    As noted, the second element of section 2-616(d) asks whether "the person, within the time that the action might have been brought or the right asserted against him or her plus the time for service permitted under Supreme Court Rule 103(b), received such notice of the commencement of the action that the person will not be prejudiced in maintaining a defense on the merits and knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him or her." 735 ILCS 5/2-616(d)(2)

- 11 -

(West 2012). In the case at bar, Dr. Elahi claims that she received no such notice and that the first she learned of the lawsuit was when she was served with the amended complaint several months after the limitations period expired.

¶ 44 There are two Illinois cases discussing section 2-616(d)'s notice requirement, both of which rely on federal case law for guidance due to the similarity between section 2-616(d) and Rule 15(c), as discussed above.[5] In *Polites v. U.S. Bank National Ass'n*, 361 Ill. App. 3d 76, 88 (2005), we noted that "[f]ederal courts have decided three types of notice comply with Federal Rule of Civil Procedure 15(c): (1) actual notice received by the party [citation]; (2) actual notice received by the party's agent [citation]; or (3) constructive notice [citation]." In the case at bar, there is no allegation that Dr. Elahi received actual notice of the lawsuit within the limitations period, and there is no allegation that anyone acting as Dr. Elahi's agent received notice of the lawsuit.[6] However, section 2-616(d)'s notice requirement can still be satisfied if Dr. Elahi received constructive notice of the lawsuit within the limitations period.

¶ 45 "Constructive notice occurs where a defendant does not receive notice of an impending lawsuit, but due to its relationship with an entity that received actual notice, knowledge of the action is imputed to the defendant for purposes of adding it as a new party." *Polites*, 361 Ill. App. 3d at 90. "Under federal law, there are three ways to establish constructive notice: (1) notice via sharing an attorney with the original defendant [citation]; (2) notice via an identity of interest with the original defendant [citation]; or (3) notice via someone who handles the would-be defendant's insurance claims [citations]." *Polites*, 361 Ill. App. 3d at 90-91.

¶ 46 We first consider whether the shared-attorney method of notice would be applicable to the case at bar. "The 'shared attorney' method of imputing *** notice is based on the notion that, when an originally named party and the party who is sought to be added are represented by the same attorney, the attorney is likely to have communicated to the latter party that he may very well he joined in the action." *Singletary v. Pennsylvania Department of Corrections*, 266 F.3d 186, 196 (3d Cir. 2001). "In order to support an argument that knowledge of the pendency of a lawsuit may be imputed to a defendant or set of defendants because they have the same attorney(s), there must be some showing that the attorney(s) knew that the additional defendants would be added to the existing suit." *Gleason v. McBride*, 869 F.2d 688, 693 (2d Cir. 1989); *Scott v. Village of Spring Valley*, 577 F. App'x 81, 82 (2d Cir. 2014) (summary order).

¶ 47 In the case at bar, plaintiff alleges that Dr. Raziuddin, Dr. Elahi, and Dr. Dilan (who was sued for his treatment of plaintiff on December 10, 2011) were employees or agents of the defendant hospital, and we must take these allegations as true at this stage of the proceedings.[7]

[5]We note that Dr. Elahi's brief only briefly discusses one of the two cases, and neither party discusses any federal case law.

[6]While Dr. Elahi was represented by the same counsel that represented Dr. Raziuddin, Dr. Elahi claims that she did not retain counsel until she was named in the amended complaint. Thus, notice to counsel that did not represent Dr. Elahi at the time would not have been considered notice to Dr. Elahi's agent during the limitations period.

[7]In her brief, Dr. Elahi claims that she did not receive constructive notice of the lawsuit through the hospital because "she is not a hospital employee." However, the instant appeal arises from Dr. Elahi's filing of a motion to dismiss the complaint based on the statute of limitations. When reviewing a motion to dismiss under section 2-619, "a court must accept as true all well-pleaded facts in plaintiffs' complaint and all inferences that can reasonably be drawn in plaintiffs' favor." *Morr-Fitz, Inc.*, 231 Ill.

In medical malpractice cases against hospitals and employee physicians, the hospital's insurance company, or its administrator of a self-insurance program, retains a law firm to represent the individual doctors who are employed as agents or employees and are named in the complaint. The record reveals, and Dr. Elahi does not dispute, that Dr. Elahi is represented by the same counsel that initially represented Dr. Raziuddin and continues to represent[8] Dr. Dilan. Furthermore, not only is Dr. Elahi represented by the same law firm as the original defendants, she is also represented by at least some of the same individual attorneys. These attorneys would have known, during the statutory period, that Dr. Raziuddin was not plaintiff's treating physician and that Dr. Elahi, the only other physician working in the emergency room on December 14, 2011, was actually plaintiff's treating physician. Thus, they would have known that Dr. Elahi would be added to the lawsuit once plaintiff discovered his mistake. See *Gleason*, 869 F.2d at 693. Moreover, as the counsel retained on behalf of all of the individual doctors, the attorneys would also have known that they would be retained to represent Dr. Elahi.

¶ 48 Dr. Elahi claims that the knowledge of these attorneys cannot be imputed to her because she did not have any contact with them until she was served with the amended complaint on September 16, 2014, after the expiration of the limitations period. However, "the fundamental issue here is whether the attorney's later relationship with the newly named defendant gives rise to the inference that the attorney, within the [period for service], had some communication or relationship with, and thus gave notice of the action to, the newly named defendant." *Singletary*, 266 F.3d at 196-97. Here, as counsel for all of the individual doctors, the attorneys who later represented Dr. Elahi could have had "some *** relationship with" (*Singletary*, 266 F.3d at 196) Dr. Elahi even before they were formally retained to represent her such that notice can be imputed to her. A finding otherwise would encourage a law firm in such a situation to intentionally forego informing a known future client of a lawsuit against her, despite counsel being fully aware that the lawsuit would be imminent, in hopes that the lawsuit would be dismissed on statute of limitations grounds. Such procedural gamesmanship does not comport with our courts' interpretation of section 2-616, which have "historically *** liberally construed section 2-616 of the Code so that cases are decided on their merits rather than on a procedural technicality." *Compton*, 351 Ill. App. 3d at 233.

¶ 49 We are not persuaded by Dr. Elahi's attempt to analogize her situation to that present in *Borchers*. There, the appellate court found that there was no notice because, although the new defendant was represented by the same counsel as her employer, "there [was] no evidence that she communicated with [the employer's] attorneys about the suit within the statutory period." *Borchers*, 2011 IL App (2d) 101257, ¶ 60. However, *Borchers* involved a different type of "mistake" than is present in the case at bar; there, the mistake was the failure to name all of the individuals involved in causing the plaintiff's injury while, here, the mistake was the identity of the treating physician. The "shared attorney" is different as well; there, the shared attorney

---

2d at 488. Thus, we must accept as true plaintiff's allegation that the physicians were the hospital's "agent[s], servant[s] and/or employee[s]."

[8]As noted, Dr. Dilan was named as a defendant due to his treatment of plaintiff on December 10, 2011. The record contains the appearance of Dr. Dilan but does not contain any further information about the progress of the case with respect to him. Thus, we have no reason to believe that Dr. Dilan has changed counsel since the filing of his appearance.

- 13 -

was between an employer and an employee while, here, the shared attorney is between the incorrect doctor and the correct doctor. These differences are significant because the attorneys in *Borchers* would not necessarily have faced the same issue as the attorneys in the case at bar, namely, the knowledge that the correct doctor *would be* brought into the lawsuit once the mistake was discovered. Instead, the employer and its attorneys would have known only that the new defendant was a *potential* defendant. See *Borchers*, 2011 IL App (2d) 101257, ¶ 57. Moreover, that court also noted that the issue of notice was "a close one" (*Borchers*, 2011 IL App (2d) 101257, ¶ 57), and our consideration of the issue leads us to reach a different conclusion than that court. Accordingly, we find that Dr. Elahi may have received constructive notice of the lawsuit through the shared-attorney method of notice.

¶ 50    We also note that Dr. Elahi could have also received constructive notice through an identity of interest. "We also will impute notice if the parties are so closely related in their business operations or other activities that filing suit against one serves to provide notice to the other of the pending litigation." *Garvin v. City of Philadelphia*, 354 F.3d 215, 227 (3d Cir. 2003). Here, the amended complaint alleges that, "[a]t all times herein, Defendant, SEEMA ELAHI M.D, was the agent, servant and/or employee of Defendant, WEISS." Thus, we must consider whether plaintiff's allegation that Dr. Elahi was an agent of the defendant hospital is sufficient to provide Dr. Elahi with constructive notice of the original lawsuit.

¶ 51    An employee can receive constructive notice through his or her employer, but it is a fact-specific inquiry as to whether such constructive notice should be imputed. "[A]bsent other circumstances that permit the inference that notice was actually received, a non-management employee *** does not share a sufficient nexus of interests with his or her employer so that notice given to the employer can be imputed to the employee for [relation-back] purposes." *Singletary*, 266 F.3d at 200. For instance, in *Singletary*, the facts present in that case led the Third Circuit Court of Appeals to conclude that a prison psychologist did not receive constructive notice through the filing of a lawsuit against the prison because the psychologist "was a staff level employee at [the prison] with no administrative or supervisory duties at the prison. Thus, [his] position at [the prison] cannot alone serve as a basis for finding an identity of interest, because [the psychologist] was clearly not highly enough placed in the prison hierarchy for us to conclude that his interests as an employee are identical to the prison's interests." *Singletary*, 266 F.3d at 199; see also *Borchers*, 2011 IL App (2d) 101257, ¶ 60 (finding no constructive notice where the newly added defendant "was a nonmanagerial employee whose awareness of the suit cannot be presumed from [her employer's or her supervisor's] knowledge"). By contrast, in *Ayala Serrano v. Lebron Gonzalez*, 909 F.2d 8, 12-13 (1st Cir. 1990), the First Circuit Court of Appeals concluded that a prison officer received constructive notice sufficient for the relation-back doctrine where his supervisors were named in the complaint and he was present during the alleged assault on the plaintiff.

¶ 52    In the case at bar, the record does not provide sufficient information to resolve this factual issue. Plaintiff has alleged that Dr. Elahi was an "agent, servant and/or employee" of the defendant hospital, and the record reveals that Dr. Elahi was one of two emergency room physicians working at the defendant hospital emergency room on December 14, 2011. This is simply not enough information to draw any conclusions as to Dr. Elahi's position within the hospital, her level of responsibility, her duties, or her interactions with Dr. Raziuddin, all of which would be relevant to the determination of whether notice should be imputed. Thus, it

may be that, as a question of fact, Dr. Elahi received such constructive notice as an employee of the defendant hospital.

¶ 53    Finally, although it was not developed by the parties in the case at bar, notice may be imputed via someone who handles the defendant's insurance claims. See *Polites*, 361 Ill. App. 3d at 91. We can take judicial notice that all physicians or hospitals have medical malpractice insurance or are covered by self-insurance administered by professionals under the same programs used by insurance companies. It is the insurance companies or the self-insurance administrators that retain the lawyers. It is the insurance companies or self-insurance administrators that plaintiffs' lawyers contact and negotiate with before they file suit. Whatever knowledge the insurance company or self-insurance administrator had in this case was not developed by plaintiff in the case at bar. The insurance company or self-insurance administrator would be the agent of the physician, and any knowledge they have would be imputed to their insured. See *Korn v. Royal Caribbean Cruise Line, Inc.*, 724 F.2d 1397, 1401 (9th Cir. 1984) (finding constructive notice to the insured where the insurance company who handled its personal injury claims had knowledge of the suit).

¶ 54    In the case at bar, once a notice of attorney's lien was served on Dr. Raziuddin and/or the hospital, that notice of attorney's lien would have been sent to the insurance company or administrator of a self-insurance program for the hospital and Dr. Raziuddin and a claim file would have been created and the matter investigated. The knowledge of the insurance company or administrator of self-insurance claims could be imputed to Dr. Elahi. Again, this factual issue was not sufficiently developed for us to make any determination.

¶ 55    In conclusion, we answer the second part of the certified question in the affirmative: a defendant may receive notice under section 2-616(d) even in the absence of actual notice, provided that there is constructive notice. However, in the case at bar, the record is not sufficiently developed for us to determine, as a matter of fact, whether any of the three methods of constructive notice are applicable in the instant case. That is a factual determination that needs to be decided by the trial court below.

¶ 56                                         CONCLUSION

¶ 57    For the reasons set forth above, plaintiff's omission of Dr. Elahi as a defendant can be considered a mistake for purposes of applying section 2-616(d)'s relation-back doctrine, despite the fact that Dr. Elahi's handwritten name appears in plaintiff's medical records. Additionally, a defendant may receive notice under section 2-616(d) in the absence of actual notice through the theory of constructive notice. In the case at bar, whether Dr. Elahi received constructive notice has not yet been developed in this case, and as a result, we remand this matter to the circuit court of Cook County so that the parties can develop the record and the trial court can make this factual determination.

¶ 58    Certified question answered.

¶ 59    JUSTICE LAMPKIN, dissenting.

¶ 60    I respectfully dissent. I would decline to address the certified question. Although defendant Dr. Elahi attempted to frame the certified question as a question of law, the resolution of the question involves merely the application of the law to the facts of the instant case. See *Thomas*

*v. Page*, 361 Ill. App. 3d 484, 494 (2005). Moreover, there is not "substantial ground for difference of opinion" concerning the area of law involved, and an immediate appeal from the interlocutory order would not "materially advance the ultimate termination of the litigation." Ill. S. Ct. R. 308(a) (eff. Jan. 1, 2015). Thus, any answer this court provides is an advisory opinion (*Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 469 (1998)), and Illinois courts do not issue advisory opinions to guide future litigation (*Golden Rule Insurance Co. v. Schwartz*, 203 Ill. 2d 456, 469 (2003)).

¶ 61 Illinois Supreme Court Rule 308, which governs interlocutory appeals, is an exception to the general rule that only final orders from a court are subject to appellate review. *Morrissey v. City of Chicago*, 334 Ill. App. 3d 251, 257 (2002). Rule 308 was intended to be used sparingly and limited to those special circumstances set forth in the rule; it was never intended to serve as a vehicle to appeal interlocutory orders involving little more than an application of the law to the facts of a specific case. *Thomas*, 361 Ill. App. 3d at 494.

¶ 62 The circuit court's denial of Dr. Elahi's motion to dismiss the amended complaint as barred by the statute of limitations was based on the application of section 2-616(d) of the Code to the alleged facts in the instant case, and this appeal does not show any substantial ground for difference of opinion concerning the interpretation or application of section 2-616(d). After reviewing the briefs and record in this case, I do not believe this certified question presents a question of law. Therefore, I would vacate our order allowing this interlocutory appeal and dismiss this appeal.